625 S.E.2d 260

**Thomas J. ALUISE and Jacqueline B. Aluise, Plaintiffs Below, Appellants,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Betsy A. Ross, and Terry Ridenour, Defendants Below, Appellees.**

**No. 32723, 32724.**

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 2, 2005.

Filed: Dec. 1, 2005.

---

Vincent J. King, South Charleston, for Appellants.

Dale A. Buck, Martin & Seibert, Martinsburg, for Appellees.

Justice DAVIS delivered the Opinion of the Court.

DAVIS, J.

This case involves two consolidated appeals filed by Thomas J. Aluise and Jacqueline B. Aluise, appellants/plaintiffs below (hereinafter referred to as "the Aluises"), from two adverse summary judgment orders entered by the Circuit Court of Kanawha County. The two orders granted summary judgment to Nationwide Mutual Fire Insurance Company and two of its employees, Betsy A. Ross and Terry Ridenour, appellees/defendants below (hereinafter collectively referred to as "Nationwide"). Here, the Aluises contend the circuit court erred in granting Nationwide summary judgment, denying their motions for summary judgment, and erred in adopting the recommendations of a discovery commissioner. Based upon the arguments of the parties and a careful review of the record, we affirm the circuit court's order.

I.

### FACTUAL AND PROCEDURAL HISTORY

This litigation grew out of problems the Aluises encountered after they purchased their home. In October 1994, the Aluises purchased a home in Charleston, West Virginia, from Christer and Natalie Forssenius (hereinafter referred to as "the Forsseniuses"). Prior to the sale, the Forsseniuses gave the Aluises a Seller's Property Disclosure. The disclosure stated that (1) there were no structural problems with the home, (2) no substantial alterations had been made to the home, and (3) no moisture or water problem existed in the basement or crawl space of the home.

Over the course of several years the Aluises began noticing cracks and moisture build-up in parts of their home. In June of 2002, the Aluises hired a contractor to repair a crack in the garage portion of the basement. The contractor advised the Aluises that there were indications that the garage crack had been previously repaired. In July, 2002 an engineer inspected the home. The engineer found that structural movement had taken place on the front and side foundational walls. In November of 2002, a contractor discovered that a "false wall" had been built in the basement, approximately five inches from the concrete block. Additionally, there were signs that previous efforts had been made to repair the concrete block.

As a consequence of discovering the concealed structural problems in the home, the Aluises filed an action on December 23, 2002,

against the Forsseniuses and others.[1] Nationwide, who had issued a homeowner's policy to the Forsseniuses when they owned the home, issued a denial of coverage letter on January 3, 2003, stating that the allegations in the complaint did not fall within the Forsseniuses' homeowner's policy.[2]

In April of 2003, the Forsseniuses allowed judgment to be entered against them in the amount of $34,000.00. Also, the Forsseniuses assigned the Aluises any first-party bad faith claim they may have had against Nationwide. In exchange for the assignment, the Aluises entered into a covenant not to execute the judgment against the Forsseniuses.

On July 18, 2003, the Aluises filed an action against Nationwide in the Circuit Court of Kanawha County. The complaint asserted causes of action for first-party breach of contract, first-party bad faith settlement, and third-party bad faith settlement. After answering the complaint, Nationwide filed a motion for summary judgment on December 24, 2003.

On January 5, 2004, while the case was still pending in Kanawha County, the Aluises filed a separate action in the Circuit Court of Cabell County against Nationwide, its adjuster Betsy A. Ross, and its claims legal counsel, Terry Ridenour. The Cabell County complaint asserted twelve causes of action that included three breach of contract claims involving homeowner's policies allegedly issued to the Forsseniuses in West Virginia, Indiana and Virginia; four first-party bad faith claims; and five third-party bad faith claims.

On April 28, 2004, the Circuit Court of Kanawha County entered an order consolidating the two actions. This order also bifurcated the contract coverage and duty to defend issues from the bad faith claims, and stayed discovery on the bad faith claims.

On March 31, 2004, the Aluises filed nine motions for partial summary judgment.[3] On June 16, 2004, the circuit court heard oral arguments on five of the Aluises' motions for partial summary judgment, and on Nationwide's previously filed motion for summary judgment relating to the issues of coverage and the duty to defend. By order entered July 22, 2004, the circuit court granted Nationwide's motion for summary judgment concluding there was no coverage or duty to defend. The order also denied the Aluises' motions for partial summary judgment.

Nationwide filed a motion for summary judgment on the remaining bad faith claims on August 9, 2004. The Aluises responded to the motion by arguing that the July 22 summary judgment order involved only the West Virginia policy, and that issues related to coverage and the duty to defend under the Virginia and Indiana policies remained. The Aluises also asked the court to rule upon its previously filed partial summary judgment motions involving the bad faith claims. Nationwide replied to the Aluises' response by pointing out that the controlling language of the Virginia policy was identical to the West Virginia policy.[4] Nationwide also alleged that the Aluises failed to show that an Indiana policy was issued to the Forsseniuses. By order entered December 16, 2004, the circuit court granted Nationwide's motion for summary judgment on all remaining issues and denied the Aluises remaining motions for partial summary judgment. Thereafter, the Aluises filed separate appeals to this Court for the summary judgment orders entered on July 22 and December 16, 2004. We consolidated the two appeals for purposes of our review.

## II.

### STANDARD OF REVIEW

This case involves two orders by the circuit court granting summary judgment

---

1. The real estate agent and home inspector were also named as defendants.

2. A subsequent letter was issued regarding the denial of a defense for the Forsseniuses.

3. Five of the motions dealt with coverage claims and four concerned bad faith claims. The circuit court permitted argument only on the coverage claims, because the bad faith claims had been bifurcated and stayed.

4. The Virginia policy was attached as an exhibit.

to Nationwide. The standard of review of a circuit court's entry of summary judgment is *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). It is equally well-established that, as here, " '[t]he interpretation of an insurance contract ... is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal.' " *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998) (quoting *Payne v. Weston*, 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995)). This Court has held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

### III.

### DISCUSSION

The Aluises have made numerous separate assignments of errors from the summary judgment orders entered on July 22 and December 16. They have also assigned error to a discovery order entered by the circuit court on February 25, 2004. We will examine separately the issues presented for each order.

#### A. The July 22nd Summary Judgment Order

The July 22 summary judgment order involved the initial complaint filed by the Aluises in the Circuit Court of Kanawha County. That summary judgment order disposed of allegations involving the West Virginia homeowner's policy issued to the Forsseniuses. The Aluises have raised numerous issues concerning the July 22 order. However, we need address only three of those issues: the evidence considered by the circuit court, the coverage extended by the policy, and the duty to defend.

**1. The evidence considered by the circuit court.** The Aluises first contend that summary judgment should be reversed because the circuit court relied on evidence that was outside the parameters of Rule 56. According to the Aluises, the *only* type of evidence a circuit court may consider on a motion for summary judgment are pleadings, depositions, answers to interrogatories, admissions and affidavits. Further, the Aluises argue that Nationwide did not present this type of evidence and, instead, relied upon "extraneous" evidence not contemplated by Rule 56.

Rule 56(c) states that summary judgment "shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Aluises have taken this language for the proposition that no other type of evidence may be considered on a motion for summary judgment. The Aluises' are wrong to so narrowly construe the rule.

This Court has long held that " '[a] motion for summary judgment should be granted if the pleadings, affidavits *or other evidence* show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Syl. pt. 2, *Harrison v. Town of Eleanor*, 191 W.Va. 611, 447 S.E.2d 546, (W.Va.1994) (emphasis added) (quoting Syllabus, *Hanks v. Beckley Newspapers Corp.*, 153 W.Va. 834, 172 S.E.2d 816 (1970)). *See also Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W.Va. 578, 586 n. 2, 567 S.E.2d 294, 302 n. 2 (2002) (per curiam) (" 'Upon motion for a summary judgment under Rule 56, R.C.P. all exhibits and affidavits and other matters submitted by both parties should be considered by the court, and such motion can be granted only when it is clear that no genuine issue of material fact is involved.' ") (quoting Syl. pt. 3, *Haga v. King Coal Chevrolet Co.*, 151 W.Va. 125, 150 S.E.2d 599 (1966)). In other words, "Rule 56(c) does not contain an exhaustive list of materials that may be submitted in support of summary judgment. In addition to those listed, [a court] 'may consider any material that would be admissible or usable at trial.' " *Williams v. Vasquez*, 2002 WL 799854, *1 (N.D.Ill.2002) (quoting *Aguilera v. Cook County Police & Corrections*

*Merit Bd.*, 760 F.2d 844, 849 (7th Cir.1985)).[5] *See also Bramlage v. Wells Fargo Home Mortgage, Inc.*, 144 Fed.Appx. 489, 494 (6th Cir.2005) ("Legal commentators have recognized that '[d]ocuments are routinely considered in Rule 56 motions and the omission of them in Rule 56(c)'s listing of summary judgment evidence must be considered nothing more than an oversight. The inclusion of documentary evidence as a legitimate form of summary judgment input should be seen as uncontroversial." ' (quoting Edward Brunet, Summary Judgment Materials, Federal Rules Decisions (May 1993)); Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 56(c), at 937 (2002) ("A motion for summary judgment should be granted if the pleadings, exhibits, depositions, interrogatories, affidavits *or other evidence* show ... that the moving party is entitled to judgment as a matter of law." (emphasis added)).

■ Consequently, we hold that Rule 56(c) of the West Virginia Rules of Civil Procedure does not contain an exhaustive list of materials that may be submitted in support of summary judgment. In addition to the material listed by that rule, a trial court may consider any material that would be admissible or usable at trial.

■ The "extraneous" evidence that the Aluises contend was impermissible under Rule 56(c) was a "Property Disclosure Statement" that was submitted by the Forsseniuses when they sold their home to the Aluises.[6]

---

5. Our Rule 56 is patterned after Rule 56 of the Federal Rules of Civil Procedure. Therefore, we look to Federal law for guidance. *See, e.g., State ex rel. Paige v. Canady*, 197 W.Va. 154, 160, 475 S.E.2d 154, 160 (1996) ("Because the language contained in Rule 26(c) of the West Virginia Rules of Civil Procedure is nearly identical to Rule 26(c) as contained in the Federal Rules of Civil Procedure, we look to federal case law for guidance.").

6. The Property Disclosure Statement indicated, among other things, that there was no moisture or water problems in the basement or crawl space.

7. The Aluises attached twenty-two exhibits to their complaint.

8. The circuit court's order made the following finding: "At the closing, the [Forsseniuses] pro-

In view of the above cited authorities and our holding, we do not find that the "Property Disclosure Statement" was outside the parameters of Rule 56(c) simply because it was not listed under that rule.

The Aluises also contend that the "Property Disclosure Statement" was inadmissible hearsay and therefore outside the scope of Rule 56. We note that "in deciding a motion for summary judgment, a court may rely only on material that would be admissible at trial." *Rubens v. Mason*, 387 F.3d 183, 188 (2nd Cir.2004) (citation omitted). It has also been recognized that "[h]earsay evidence is not admissible ... for summary judgment purposes, unless it falls within one of the exceptions specified in the ... Rules of Evidence." *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 76 (1st Cir.2005) (citations omitted). Nationwide contends that the "Property Disclosure Statement" was made an exhibit that was attached to the Aluises' complaint. Therefore, the disclosure statement was admissible. Nationwide's assertion is not altogether correct. In our review of the record we find that the specific language in the "Property Disclosure Statement" that was relied upon by the circuit court in rendering summary judgment, was also reprinted in two exhibits that the Aluises attached to their complaint.[7] Insofar as the specific language relied on by the circuit court in rendering summary judgment existed in two exhibits attached to the complaint,[8] we will

duced a 'Property Disclosure Statement' ... which stated that there were no structural problems with the home, no substantial alterations had been made, and there was no moisture or water problem in the basement crawl space." This finding is set out in the Property Disclosure Statement as follows:

k. Are there any structural problems with the Improvements?

YES    __X__ NO    DO NOT KNOW

l. Have any substantial additions or alterations been made without a required building permit?

YES    __X__ NO    DO NOT KNOW

m. Are there moisture and/or water problems in basement or crawl space?

YES    X NO    DO NOT KNOW

address the Aluises' hearsay argument in the context of an exhibit attached to a complaint. *See Gentry v. Mangum,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995) ("[I]t is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court.").

▆▆▆ The general rule is that "[i]n considering a motion for summary judgment a court may consider the pleadings, *including attachments to the complaint,* affidavits, depositions, answers to interrogatories or answers to requests for admissions." *Brasure v. Optimum Choice Ins. Co.,* 37 F.Supp.2d 340, 344–345 (D.Del.1999) (emphasis added). Additionally, it has been noted and we now hold that "Rule 10(c) [of the West Virginia Rules of Civil Procedure] makes a copy of any written instrument that is an exhibit to a pleading a part thereof for all purposes. The contents of such exhibits may be considered as evidence for dispositive motions." Cleckley, Davis and Palmer, *Litigation Handbook,* § 10(c), at 237.[9] Further, "[f]actual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988). *See also Wheeling–Pittsburgh Steel Corp. v. Rowing,* 205 W.Va. 286, 302, 517 S.E.2d 763, 779 (1999) (" 'Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.' ") (quoting *Keller v. United*

*States,* 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995)). Moreover, "an admission by a party-opponent is a statement which is not hearsay and thus, is admissible as substantive evidence." *McCloud v. Salt Rock Water Pub. Serv. Dist.,* 207 W.Va. 453, 456, 533 S.E.2d 679, 682 (2000) (per curiam).[10] Insofar as the dispositive language in the "Property Disclosure Statement" was contained in two exhibits attached to the Aluises' complaint, the circuit court properly considered that language in rendering summary judgment.

▆▆▆ **2. Coverage extended by the policy.** The Aluises next contend that the West Virginia homeowner's policy issued by Nationwide to the Forsseniuses provided coverage for the claims they made against the Forsseniuses in the underlying suit. The circuit court found that there was no coverage because "[a] homeowners policy is not intended to be a warranty upon sale." We agree.

The relevant language in the policy provided that Nationwide "will pay damages which the insured is legally obligated to pay due to an occurrence[.]" The policy defined an "occurrence" as follows:

> Occurrence means bodily injury[11] or property damage[12] resulting from an accident, including continuous or repeated exposure to the same general conditions. The occurrence must be during the policy period.

(Footnotes added).

▆▆▆ This Court has long held that "[l]anguage in an insurance policy should be

---

In the two exhibits attached to the Aluises' complaint, the following was reprinted in connection with the "Property Disclosure Statement":

k. Are there any structural problems with the improvements?
    YES    X   NO     DO NOT KNOW

l. Have substantial additions or alterations been made without a required building permit?
    YES    X   NO     DO NOT KNOW

m. Are there moisture and/or water problems in basement or crawl space?
    YES    X   NO     DO NOT KNOW

9. *See* W. Va. Rules of Civil Procedure, Rule 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. *A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."* (emphasis added)).

10. *See* W. Va. Rules of Evidence, Rule 801(d)(2)(B) ("A statement is not hearsay if—(2) Admission by party-opponent.—The statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth[.]").

11. Bodily injury was defined in the policy as:
> "Bodily injury" means bodily harm, sickness or disease, including resulting care, loss of services and death.

12. Property damage was defined in the policy as:
> "Property damage" means physical injury to or destruction of tangible property. This includes resulting loss of its use.

given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). *See also* Syl. pt. 2, *American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825 (2002). Further, "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). *See also* Syl. pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

■■■ The complaint filed by the Aluises against the Forsseniuses in the underlying action, essentially alleged that the Aluises sustained damages as a result of the failure of the Forsseniuses to disclose a structural and water seepage problems in the home. Nationwide contends that such a claim against the Forsseniuses is clearly not an occurrence within the meaning of the policy. We agree.

The coverage issue presented in this case was addressed in *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703 (8th Cir.2002). In that case, a couple, Steve and Bonnie Thompson (hereinafter referred to as "the Thompsons"), filed an action against Charles and Barbara Lippincott (hereinafter referred to as "the Lippincotts") alleging fraud in the sale of a home they purchased from the Lippincotts. Specifically, the Thompsons alleged the Lippincotts intentionally and negligently concealed structural damage to a house they sold to the Thompsons. It was determined that before listing the house for sale, the Lippincotts patched a structural crack with spackling, covered a crack with carpet, and then filled a room with boxes, making it difficult to discover the cracks. In selling the home to the Thompsons, the Lippincotts completed a property disclosure statement falsely representing that they were unaware of any past or present cracks or flaws in the walls or foundations. A judgment was eventually entered awarding the Thompsons $75,000. Subsequent to the judgment, the Lippincotts' insurer filed a declaratory judgment action seeking a determination that judgment en-

tered against its insureds was not covered under their basic insurance and umbrella policies. The district court granted summary judgment to the insurer upon finding the policies did not cover the claim against the Lippincotts. The Eighth Circuit Court of Appeals agreed with the district court for the following reasons:

> The Lippincotts' negligent misrepresentations did not cause any property damage to the house. Neither did the Lippincotts' actions to conceal the cracks in the house cause any property damage to the house. The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the Lippincotts incurred liability. The Thompsons' judgment covered the intangible losses incurred when the Thompsons relied to their economic detriment upon the Lippincotts' misrepresentations. These damages are pecuniary in nature and are not property damage within the meaning of the St. Paul insurance policies.

*St. Paul*, 287 F.3d at 706. The decision in *St. Paul* is not isolated. It has been recognized that courts "are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis [as] property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowners] policies[.]" *State Farm Fire and Cas. Co. v. Brewer*, 914 F.Supp. 140, 142 (S.D.Miss.1996) (citing *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500 (9th Cir. 1990)). *Accord Allstate Ins. Co. v. Morgan*, 806 F.Supp. 1460 (N.D.Cal.1992); *Allstate Ins. Co. v. Chaney*, 804 F.Supp. 1219 (N.D.Cal.1992); *Allstate Ins. Co. v. Hansten*, 765 F.Supp. 614 (N.D.Cal.1991); *State Farm Fire and Cas. Co. v. Gwin*, 658 So.2d 426 (Ala.1995); *Devin v. United Servs. Auto. Assoc.*, 6 Cal.App.4th 1149, 8 Cal.Rptr.2d 263 (1992); *Dixon v. National Am. Ins. Co.*, 411 N.W.2d 32 (Minn.App.1987); *Qualman v. Bruckmoser*, 163 Wis.2d 361, 471 N.W.2d 282 (1991).

■■■ Based upon the overwhelming authorities, we now hold that, absent policy

language to the contrary, a homeowner's policy defining "occurrence" as "bodily injury or property damage resulting from an accident" does not provide coverage for an insured homeowner who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home.

Applying our holding to the facts of this case, it is clear that no language in the policy provided coverage for the type of action the Aluises brought against the Forsseniuses. The policy provided coverage for property damage or bodily injury sustained at the Forsseniuses home. The Aluises sought damages for economic losses they sustained as a result of the negligent or intentional failure of the Forsseniuses to disclose defects in the home at the time of the sale. The claims asserted by the Aluises simply do not trigger an occurrence as defined under the policy. As one court appropriately noted, "[t]o find coverage existed in this case would be to find that based on an act of sale, a homeowner's insurer becomes the warrantor of the condition of the insured property. This is not the type of coverage which is contemplated by ... homeowner's policies[.]" *Lawyer v. Kountz,* 716 So.2d 493, 498 (La.Ct. App.1998). *See Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 577 (6th Cir.2001); *Shelter Mut. Ins. Co. v. Brown,* 345 F.Supp.2d 645 (S.D.Miss.2004) (same); *Allstate Ins. Co. v. Morgan,* 806 F.Supp. 1460 (N.D.Cal.1992) (same); *Miller v. Western Gen. Agency, Inc.,* 41 Cal.App.4th 1144, 49 Cal.Rptr.2d 55 (1996) (homeowners policy did not provide coverage for problems arising from sale of home); *Fisher v. Fitchburg Mut. Ins. Co.,* 131 N.H. 769, 560 A.2d 630 (1989) (same); *Syvertsen v. Great Am. Ins. Co.,* 267 A.D.2d 854, 700 N.Y.S.2d 289 (1999) (same); *Cincinnati Ins. Co. v. Anders,* 99 Ohio St.3d 156, 789 N.E.2d 1094 (2003) (same); *Sclabassi v. Nationwide Mut. Fire Ins. Co.,* 789 A.2d 699 (Pa.Super.2001) (same); *Huffhines v. State Farm Lloyds,* 167 S.W.3d 493 (Tex.Ct.App.2005) (same).

**3. Duty to defend.** The Aluises also contend that the circuit court erred in finding that Nationwide did not have a duty to defend the Forsseniuses in the underlying suit. To support their contention that a duty to defend existed, the Aluises argue that "[t]he allegations in the underlying tort case clearly allege property damage as a result of negligent repair and negligent failure to disclose." This Court has held that, "[a]s a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986) (citations omitted).

The allegations in the underlying complaint simply do not rise to the requirement of *Aetna,* that the allegations be "reasonably susceptible" to an interpretation that the claims may be covered. A case that helps illustrate this conclusion is *Qualman v. Bruckmoser,* 163 Wis.2d 361, 471 N.W.2d 282 (1991).

The decision in *Qualman* involved undisclosed defects in a home that was sold by the insureds. The buyers alleged negligent and intentional misrepresentation and breach of contract in the sale of the house. Specifically, the buyers alleged that the house had cracked basement walls and defective kitchen pipes, and that the insureds misrepresented these known conditions and breached the contract. The insureds tendered their defense to the insurer; but, the insurer declined to defend. The buyers subsequently filed an amended complaint and named the insurer as a defendant. The insureds thereafter filed a cross-claim against the insurer seeking indemnification pursuant to the terms of their homeowner's policy in the event they were required to pay any damages, and for recovery of costs incurred in the defense of the claims. The trial court granted summary judgment in favor of the insurer and entered a judgment dismissing the buyers' claims and the insureds' cross-claim. The insureds appealed. The appellate court affirmed. In addressing the duty to defend issue, the appellate court reasoned as follows:

An insurance company's duty to defend is dependent solely on the allegations of the complaint. These allegations must

state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy. Thus, for there to be a duty to defend, there must be allegations in the complaint which would fall within coverage afforded under the policy....

The pertinent language of the policy issued to the Bruckmosers provides the following:

... "Property damage" is defined in the policy as "injury to or destruction of tangible property, including the loss of its use."

The causes of action against the [insureds] relate to breach of contract and misrepresentation of significant structural defects. The damages for such claims, if proven, would be the difference between the market value of the property at the time of purchase and the amount actually paid. Therefore, the damages alleged by the [buyers] are pecuniary in nature and do not constitute property damage as defined by the insurance policy. Property damage within the meaning of the policy is not alleged. There is no coverage in the policy for the pecuniary loss the [buyers] do allege. Thus, [the insurer] has no duty to defend.

*Qualman,* 471 N.W.2d at 284–285 (internal quotation marks and citations omitted). *See also Safeco Ins. Co. of America v. Andrews,* 915 F.2d 500 (9th Cir.1990) (no duty to defend under homeowner policy for claims arising from sale of home); *Allstate Ins. Co. v. Miller,* 743 F.Supp. 723 (N.D.Cal.1990) (same).

In the instant proceeding, the complaint filed by the Aluises alleged "property damage as a result of negligent repair and negligent failure to disclose." These allegations simply do not fall within the scope of the policy and therefore did not trigger a duty to defend.[13]

### B. The December 16th Summary Judgment Order

The Aluises have assigned error to several issues regarding the circuit court's summary

judgment order of December 16, wherein the circuit court dismissed the remaining claims. Those issues involve the Virginia policy, the Indiana policy, and the bad faith claims. We will address each issue separately.

(1) **The Virginia policy.** Nationwide issued a homeowners policy to the Forsseniuses for a Virginia residence they maintained. The Aluises contended that coverage and a duty to defend existed by virtue of this policy. The circuit court's order addressed this issue as follows:

Having now reviewed the Virginia policy issued by Nationwide to Mr. and Mrs. Forssenius, the Court finds that the definitions of "occurrence" and the coverages set forth in the Virginia policy are identical to the West Virginia policy and therefore the Court finds that summary judgment is appropriate regarding coverage under the Virginia policy, incorporating herein the findings of July 22, 2004.

The Aluises do not contest the circuit court's determination that the Virginia policy was identical to the West Virginia policy. Instead, in this appeal they simply assert that "to the extent that this Court reverses as to the West Virginia policy, Appellants ask that you also reverse as to the Virginia policy." This is the sum total of the grounds for reversing the order with respect to the Virginia policy. Insofar as we have determined that no coverage or duty to defend existed under the Wets Virginia policy, we find no error with the circuit court's ruling on the Virginia policy.

(2) **The Indiana policy.** The Aluises also asserted that Nationwide issued the Forsseniuses a homeowners policy for an alleged home they owned in Indiana. The circuit court granted summary judgment on this issue because the Aluises failed to produce any evidence that such a policy was in fact issued.

In their brief, the Aluises contend that no evidence was forthcoming on the Indiana policy because the circuit court "ruled on Nationwide's motion as to all remaining counts

---

**13.** The Aluises made other assignments of error arising out of the July 22 summary judgment order. Insofar as we have determined that no coverage existed and there was no duty to defend, we need not address those additional assignments of error.

before any discovery was taken as to the newly added counts ... Therefore, to the extent that this Court finds that discovery should have been allowed, Appellants ask that the summary judgment as to the Indiana policy be reversed as well."

As an initial matter, we will note that when the circuit court consolidated the Cabell County action with the Kanawha County action, the order stayed discovery only as to the bad faith claims. Consequently, discovery was available for all other claims. The Aluises apparently did not avail themselves of the right to conduct discovery on the issue of the existence of the Indiana policy. Now, the Aluises would have this Court afford them such an opportunity. We respectfully decline to do so.

■■■ Our rules of civil procedure are quite clear as to what a party must do if he/she feels that discovery is needed before he/she can defend against a motion for summary judgment. We addressed this issue in syllabus point 3 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), as follows:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) *submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.*

(Emphasis added).

■■■ Under *Williams*, the Aluises were required to submit an affidavit explaining the need for discovery in order to resist summary judgment as to the Indiana policy. This was not done. Consequently, the Aluis-

es cannot complain to this Court about the need for discovery on that issue.

**(3) Bad faith claims.** The Aluises argue that even if the circuit court was correct in dismissing the substantive claims under the policies, it erred in dismissing the bad faith claims alleged under the West Virginia Unfair Claims Settlement Practices Act, W. Va. Code § 33–11–4(9) (2003). The Aluises point out that under the Act "there is no requirement that one substantially prevail" with respect to the underlying coverage and/or duty to defend claim(s). *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 427, 475 S.E.2d 507, 519 (1996).

Here, the Aluises have briefed only one issue as the basis for keeping their bad faith claims alive. The Aluises allege that an issue exists as to whether Nationwide promptly responded when the Forsseniuses notified them of the lawsuit. Under the regulations promulgated pursuant to the Act, Nationwide had to respond within 15 working days. *See* 114 CSR 14–5.3.

Nationwide was informed of the lawsuit by the Forsseniuses on December 16, 2002.[14] Nationwide investigated the matter and issued a denial of coverage letter to the Forsseniuses on January 3, 2003. Excluding nonworking days, it is clear that Nationwide responded within 15 working days. Further, after the lawsuit was actually filed, a request was made for Nationwide to provide a defense on January 8, 2003. On January 20, 2003, Nationwide issued a letter denying a defense. This response was also within the 15 day requirement. Insofar as the Aluises have not asserted any other reasons why their bad faith claims should not have been dismissed, we will not disturb the circuit court's ruling on the issue.[15]

### C. Discovery Order

On December 8, 2003, the circuit court referred certain discovery matters to a Special Commissioner. A hearing was conducted by the Special Commissioner and on January 30, 2004, the Special Commissioner

---

**14.** The lawsuit was not actually filed until December 23, 2002.

**15.** The Aluises have also argued that the circuit court erred in denying their additional motions for partial summary judgment and failing to set out separate findings of fact thereon. This argu-

ment has no merit. Insofar as the circuit court granted Nationwide's motion for summary judgment, there was no need for the court to set out separate findings in denying the Aluises' additional motions for partial summary judgment.

issued a report. By order entered February 25, 2004, the circuit court adopted the report of the Special Commissioner. In this appeal, the Aluises have assigned a number of issues as error regarding the discovery order. In their brief, the Aluises indicate that if this Court affirmed the summary judgment orders the issues raised involving the discovery order are moot. We agree. However, we believe that one of the discovery order issues raised by the Aluises should be addressed even though the issue is moot in this case.

■ This Court set out the standard for determining whether to address a moot issue in syllabus point one of *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989):

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

■ The moot issue presented in this case involves a request by the Aluises to record the discovery proceedings held before the Special Commissioner. The Aluises contend that on the day the proceeding was actually held they asked the Special Commissioner to allow a court reporter to record the proceedings. The Special Commissioner refused the request. The Aluises contend that they should have been permitted to have the proceedings recorded. We believe that the issue of utilizing a court reporter at a proceeding before a Special Commissioner raises a legal matter of vital public interest which is subject to repetition and requires guidance from this Court for future actions. Consequently, we will address this matter though it is moot for the purposes of the Aluises' appeal.

■ We have previously noted that "there is the time-honored use of special commissioners by courts for certain purposes[.]" *Nagy v. Oakley*, 172 W.Va. 569, 571, 309 S.E.2d 68, 70 (1983). *See also State of West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W.Va. 705, 720, 601 S.E.2d 25, 40 (2004) ("In conducting *in camera* examinations of the purportedly privileged communications, the circuit court may conduct such inquiries itself or may, in the interests of judicial economy, appoint a special master for this purpose."). Although no specific statute or rule authorizes trial courts to appoint commissioners to preside over discovery matters,[16] it has been correctly noted that,

> Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate in-

---

**16.** Unlike its federal counterpart, Rule 53 of the West Virginia Rules of Civil Procedure does not authorize the appointment of a commissioner. Rule 53 simply provides that the manner in which commissioners were appointed in the past shall continue. *See* Rule 53 ("Commissioners in Chancery shall henceforth be known as 'Commissioners.' The practice respecting the appointment of such commissioners and references to them, and respecting their powers and duties, and the powers and duties of courts to hold hearings upon their reports, shall be in accordance with the practice heretofore followed in this State. In all other respects, the action in which a commissioner is appointed, is governed by these rules."). There are several statutes providing for appointment of commissioners for specific matters. *See, e.g.,* W. Va.Code § 19–21A–10 (2004) ("If it shall appear to the court that testimony is necessary for the proper disposition of [a

land use] matter, it may take evidence, or appoint a special commissioner to take such evidence as it may direct, and report the same to the court with his or her findings of fact and conclusions of law which shall constitute a part of the proceedings upon which the determination of the court shall be made."); W. Va.Code § 51–5–1 (2005) ("Each circuit court ... may from time to time appoint not more than four commissioners in chancery or for stating accounts ... with power to take depositions and to swear and examine witnesses and to certify their testimony."); W. Va.Code § 54–2–18 (2000) ("To aid in properly disposing of [eminent domain] money, the court or judge may appoint a commissioner to take evidence of the conflicting claims."); W. Va.Code § 56–7–10 (2005) ("At law, in any case in which it may be deemed necessary, the court may direct [a] commissioner or other competent person, either before or at the time of trial, to

struments required for the performance of their duties.... This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties as they may arise in the progress of a cause.

*In re Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920). *See also United Steelworkers of Am., AFL–CIO, CLC v. Tri–State Greyhound Park,* 178 W.Va. 729, 735, 364 S.E.2d 257, 263 (1987) (" 'The general rule applicable in equitable actions is that even in the absence of a statute authorizing it, a court of equity has inherent power to enter an order [appointing a commissioner]' 66 Am.Jur.2d References § 13, at 489 (1973)."); *People v. Superior Court,* 25 Cal.4th 703, 107 Cal.Rptr.2d 323, 328, 23 P.3d 563 (2001) ("[T]he superior court nonetheless possesses inherent authority to appoint a special master to assist it in examining such documents and ruling upon the claims of privilege."); *State v. Doe,* 93 N.M. 621, 603 P.2d 731, 734 (1979) ("[I]t is generally recognized that the district court has inherent power to appoint special masters. This is an inherent power of the judiciary."). In the instant proceeding, the trial court relied upon its inherent authority to appoint the Special Commissioner to hold a hearing and make recommendations regarding specific discovery issues.

The general guidelines for commissioners appointed by trial courts to address specific matters has been summarized as follows:

> An order referring a case to a commissioner is the source and limit of the commissioner's duties and powers. If an order is silent on the manner in which a commissioner must conduct a proceeding, the commissioner has substantial discretion to determine the kind of evidence the parties must submit and the manner in which it may be presented. Further, the commissioner has discretion, absent a trial court's order to the contrary, to permit discovery

or hold an evidentiary hearing in a particular case.

Cleckley, Davis and Palmer, *Litigation Handbook,* § 53, at 131 (Supp.2005). In the instant proceeding, the order appointing the Special Commissioner did not address the issue of recording the proceedings. However, the Special Commissioner had discretionary authority to allow the Aluises to record the hearing. In an effort to resolve the issue of recording proceedings heard by commissioners appointed by trial courts, we now hold that, in a proceeding heard by a Special Commissioner appointed by a trial court, a party is entitled to have the proceeding recorded if a timely request is made. The costs incurred in recording the proceeding shall be borne by the party making the request, if the parties have not made other arrangements for paying such costs.

Under the facts of this case and in view of our holding, we do not believe the Special Commissioner abused his discretion in not permitting the proceedings to be recorded. During oral argument it was indicated that the request to have the proceeding recorded was made at the hearing before the Special Commissioner. There was no indication that the means for recording the proceeding were immediately available when the request was made, i.e., the hearing would have been delayed for some unspecified time in order to provide a method of recording the proceeding. Under these facts, we believe the request was simply untimely made.[17]

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's summary judgment orders of July 22, 2004, and December 16, 2004, are affirmed.

Affirmed.

---

take and state an account between the parties, which account, when thus stated, shall be deemed prima facie correct, and may be given in evidence to the court or jury trying the case.").

**17.** Had the Aluises brought a court reporter, or some other method of recording, to the proceeding, we believe the Special Commissioner would

have abused his discretion in denying the request. *See Lowe v. City of Arlington,* 470 S.W.2d 206, 207 (Tex.App.1971) ("It was an abuse of discretion on the part of the trial court to refuse permission ... to provide a court reporter to transcribe the proceedings.").