IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2017 Session

ERIE INSURANCE EXCHANGE V. GARY H. MAXWELL, ET AL.

Appeal from the Chancery Court for Putnam County
No. 2016-14      Ronald Thurman, Chancellor

No. M2017-00193-COA-R9-CV

Erie Insurance Exchange ("Erie") commenced this declaratory judgment action seeking a declaration that Erie has no duty to defend its insureds in a separate action because the policies of insurance issued to its insureds provided no coverage for the claims asserted in that action. The insureds are the defendants in a separate action in which the buyers of the insureds' home allege that the insureds made negligent misrepresentations concerning the property's propensity to flood. The buyers sought to recover damages they sustained from flooding that occurred after the sale. Following discovery, Erie filed a motion for summary judgment on the ground that the "negligence" and "negligent misrepresentation" claims asserted against its insureds do not contain any allegations that constitute an "occurrence" as that term is defined in the policies; therefore, there is no coverage and no duty to defend the insureds. The trial court denied the motion, and this appeal followed. We have determined that the "negligence" and "negligent misrepresentation" claims asserted against Erie's insureds do not arise from an "occurrence" as that term is defined in the insurance policies; therefore, there is no coverage, and Erie has no duty to defend the insureds in the other action. For these reasons, we reverse the judgment of the trial court and remand with instructions to enter summary judgment in favor of Erie.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Parks T. Chastain and Ashley E. Geno, Nashville, Tennessee, for the appellant, Erie Insurance Exchange.

Patrick Shea Callahan, Cookeville, Tennessee, for the appellees, Gary H. Maxwell and Lucretia H. Maxwell.

# OPINION

On January 25, 2016, Erie Insurance Exchange ("Erie") commenced this action for declaratory judgment that it has no duty to defend or indemnify Gary and Lucretia Maxwell in an action brought against the Maxwells by Paul and Barbara Chapman.

The dispute between the Maxwells and Chapmans arises from the Chapmans' purchase of the Maxwells' residential property on March 7, 2014. Prior to the sale, the Maxwells completed a residential property disclosure in which they allegedly misrepresented the propensity of the property to flood and the city's corrective action to mitigate that propensity. Five months after the Chapmans purchased the property from the Maxwells, the residence sustained damage as a result of two floods within three days. In the civil action that followed, the Chapmans alleged that they relied on the Maxwells' representations regarding the propensity for flooding and that they sustained property damage as a result of, *inter alia*, the Maxwells' negligence and negligent misrepresentations. The Chapmans asserted six claims but only two of those claims are at issue in this appeal, that of negligence and negligent misrepresentation.

The Chapmans' negligence claim against the Maxwells states:

25. The Defendants had a duty to advise Plaintiffs of the defects and problems with the property relative to the flooding that occurs at 609 Denton Avenue, Cookeville, Tennessee.
26. The Defendants breached this duty by failing to advise the Plaintiffs of the defects and problems with the flooding of the property prior to their purchase of the property on March 7, 2014. The Defendants knew, or should have known, that the representations set forth above were incorrect or false.
27. As a result of the negligence of the Defendants Gary H. Maxwell and wife Lucretia H. Maxwell, the Plaintiffs have sustained substantial damages.

The Chapmans' negligent misrepresentation claim against the Maxwells states:

29. Defendants had a duty to advise the Plaintiffs of the defects and problems with flooding of the property prior to their purchase of the property on March 7, 2014.
30. The Defendants made representations to the prospective purchasers in an effort to induce them into entering into a contract for the sale of real estate which is the subject matter of this litigation.

31. The representations made by the Defendants were false. The Plaintiffs relied upon the negligent misrepresentations of the Defendants and purchased the property from them.

32. As a result of the negligent misrepresentation and fraudulent inducement by the Defendants, the Plaintiffs sustained substantial damages.

The Maxwells notified Erie of the lawsuit and insisted that Erie had a duty to defend and indemnify them based on two policies Erie had issued to the Maxwells. Thereafter, Erie commenced this action in which they sought a declaratory judgment that the policies of insurance it issued to the Maxwells provided no coverage for the claims asserted in the lawsuit filed against them by the Chapmans in the Chancery Court for Putnam County, Tennessee;[1] therefore, Erie has no duty to defend the Maxwells in that action.

Erie subsequently filed a Motion for Summary Judgment based on the ground that the undisputed facts established that neither policy provided any coverage for the allegations in the Chapman lawsuit. In pertinent part, Erie contended that none of the claims asserted in the Chapman Complaint contained an allegation constituting an "occurrence" as that term was defined by either policy or applicable law; therefore, the policies provided no coverage for the claims asserted.

The trial court agreed with Erie on four of the six claims that were at issue but denied the motion as it pertained to the claims based on negligence and negligent misrepresentation. The order that followed read in pertinent part:

1. Erie Insurance Exchange's ("Erie") Motion for Summary Judgment is granted as it relates to allegations of intentional acts. In other words, Erie is under no duty to defend or indemnify Gary and Lucretia Maxwell (the "Maxwells") against Paul and Barbara Chapman's (the "Chapmans") claims of 1) Violation of the Tennessee Residential Property Disclosure Act, 2) Concealment, 3) Fraud and Intentional Misrepresentation, and 4) Breach of Contract, alleged as causes of action against Gary and Lucretia Maxwell in the underlying case styled Paul J. Chapman, et ux Barbara J. Chapman v. Gary H. Maxwell, et ux Lucretia H. Maxwell, No. 2015CV17, Chancery Court for Putnam County, Tennessee.

2. Erie's Motion for Summary Judgment is denied as it relates to allegations of "Negligence" and "Negligent Misrepresentation". This Court finds the issue is not ripe at this time because a question of fact exists with

---

[1] Case No. 2015CV17

regard to Erie's duty to indemnify. Erie has a duty to defend with regard to allegations of "negligence" and "negligent misrepresentation".

Erie then filed a Motion for Permission to File an Interlocutory Appeal pursuant to Tenn. R. App. P. 9 to appeal the denial of its motion for summary judgment concerning the "negligence" and "negligent misrepresentation" claims. The trial court granted Erie's motion, and this court granted Erie's Application for Permission to Appeal.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, there are no disputed facts. "[I]ssues regarding an insurer's duty to defend are matters of law." *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citing *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs. Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998)). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

Erie raises two issues on appeal.[2] We have determined that the dispositive issue is whether the Chapmans' claims against Erie's insureds for "negligence" and "negligent misrepresentation" arising from alleged misrepresentations made in the sale of a home

---

[2] The issues as stated by Erie in its appellant's brief read:

I. Whether the Trial Court erred in misapplying the "duty to defend" analysis?
II. Whether the Trial Court erred in holding Erie had a duty to defend when there is conflicting law (none in Tennessee) on the issue of whether "negligence" and "negligent misrepresentation" arising from misrepresentation made in the sale of a home constitutes an "occurrence" or "property damage"?

state a claim of "**property damage** caused by an **occurrence**," as those terms are defined in the insurance policies Erie issued to the Maxwells.

In determining whether an insurer has a duty to defend, we are to rely solely on the allegations contained in the underlying complaint. *St. Paul Fire & Marine Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (citing *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)). The insurer's duty to defend is triggered when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. *Id*. This duty "arises if even one of the allegations is covered by the policy." *Travelers*, 216 S.W.3d at 305 (Tenn. 2007). Furthermore, if there is any doubt as to whether the claimant has stated a cause of action within the coverage of the policy, it is resolved in favor of the insured. *Id*. (citing *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964)).

When interpreting insurance contracts, we apply the "same rules of construction used to interpret other contracts." *Travelers*, 216 S.W.3d at 305-6 (citing *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990)). Insurance contracts "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Id*. at 306. (quoting *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006)). Furthermore, insurance contracts are to be construed reasonably and logically as a whole. *Id*.

Applying these principles, we have determined that Erie does not have a duty to defend the Maxwells against the claim of negligence or negligent misrepresentation because the alleged misrepresentations did not cause the damage to the property. To understand this conclusion, we must review the policies at issue. Erie issued two policies to the Maxwells: a Home Protector Policy[3] and a Personal Catastrophe Liability Policy.[4] The Home Protector Policy states:

> We will pay all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of bodily injury or ***property damage caused by an occurrence*** during the policy period. We will pay for only bodily injury or property damage covered by this policy.

This policy defines "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." Similar to the Home Protector Policy, the Personal Catastrophe Liability Policy covers "property damage resulting from an

---

[3] This policy covered the period of September 29, 2013 to September 29, 2014.

[4] This policy covered the period of February 10, 2015 to February 10, 2016.

- 5 -

occurrence." Also, like the Home Protector Policy, the Personal Catastrophe Liability Policy defines "occurrence" as "an accident . . . which results in . . . property damage." Therefore, for a claim to be covered under either policy, the claim must arise from "an accident . . . which results in . . . property damage."[5] Neither policy defines "accident"; however, our courts have defined "accident" as an unintentional act.[6] While in certain situations a negligent act may also be an accident, the two terms are not necessarily synonymous. *Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 607 (Tenn. 1969). "The nature of the action . . . whether it be tort, contract or otherwise, may be a factor in determining if there has been an accident under a given factual situation. . . ." *Id.*

The Chapmans' complaint clearly states a claim of negligence and a claim of negligent misrepresentation concerning the propensity of the property to flood; however, for there to be coverage the claims must allege that the Chapmans sustained property damage that was **caused by an** "**occurrence**," as that term is defined in the policies. Under both Erie policies, "property damage" is only covered if the damage is caused by an "occurrence." "Occurrence" is defined by the policies as "an accident, including continuous or repeated exposure to the same general harmful conditions." By reading the Chapmans' complaint in *pari materia*, it is apparent the property damage sustained by the Chapmans was caused by flooding, not by the alleged misrepresentation of the Maxwells. Thus, the occurrence that caused the property damage was flooding, not misrepresentations by the Maxwells.

Although we have found no Tennessee authority that addresses this narrow issue, our conclusion is supported by cases Erie relies on from other jurisdictions where most

---

[5] Property damage is defined in both policies and while the definitions are somewhat different, the differences have no bearing on the issues on appeal. The Personal Catastrophe Liability Policy defines "property damage" as "injury to or destruction of tangible property including loss of its use, but not the decrease in value of the tangible property due to the damage." The Home Protector Policy defines "property damage" as:

1. Physical injury to or destruction of tangible property, including loss of its use. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.
2. Loss of use of tangible property which is not physically injured or destroyed. All such loss of use shall be deemed to occur at the time of the occurrence.

[6] In *Gassaway*, 439 S.W.2d at 608, the court stated that "accident" "should be interpreted in its ordinary and popular sense." It defined the term as "an event not reasonably to be foreseen, unexpected and fortuitous." *Id.* The Court acknowledged that this definition of "accident" is problematic because foreseeability is an element of negligence. *Travelers*, 216 S.W.3d at 308. Holding that a negligent act does not constitute an "accident," because the consequences of a negligent act are, by definition, foreseeable, is inconsistent with the Court's previous holding that a negligent act can be an accident. *Id. Merriam-Webster* defines "accident" as "an unforeseen and unplanned event or circumstance" or "lack of intention or necessity."

courts hold that a claim for negligent misrepresentation arising from the sale of property is not considered an "occurrence."[7] We will discuss seven of the cases from other jurisdictions.

The Texas Court of Appeals considered facts similar to those here in *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App. 1996). As is the case here, the homeowners' insurer sought a declaration that it had no duty to defend its insureds against claims by the buyers of the insureds' home who alleged the insureds misrepresented that the home had no foundational or drainage problems. *State Farm*, 932 S.W.2d at 734. And as Erie is doing here, the insurer contended that the allegations did not constitute any claim for damages caused by "an occurrence" or loss. *Id.* The *Kessler* court agreed with the insurer, explaining that the damages were not "property damages." *Id.* at 738. The court also held that "[e]ven if the damages alleged were property damages, which they are not, they did not result from an occurrence or loss." *Id.* In pertinent part, the *Kessler* court explained:

> The Kesslers' homeowner's policy requires that the property damages be caused by an occurrence. The policy defines occurrence as "an accident, including exposure to conditions, which results in property damage during the policy period." The umbrella policy requires that a loss cause the property damage. The policy defines loss as "an accident that results in . . . property damage during the policy period. This includes injurious exposure to conditions." Because neither an accident nor exposure to conditions caused the damages alleged by the Fannings, no occurrence or loss happened. Therefore, the policies do not cover the damages sought by the Fannings.

*Id*.

The *Kessler* court also relied on reasoning in *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153 (Tex. App. 1990), and *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500 (9th Cir. 1990). The *Houston* court held that misrepresentations and failures to disclose are not conditions that a person or property can be exposed to under the

---

[7] The cases Erie cites in its appellant's brief that held as such include: *Nat'l Fire Ins. of Hartford v. C. Hodges & Associates, PLLC*, 825 F. Supp. 2d 792, 797-98 (W.D. Tex. 2011); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App. 1996), writ denied (June 12, 1997); *Augenblick v. Nationwide Ins. Co.*, No. CIV. A. 99-3419, 1999 WL 975118 (E.D. Pa. Oct. 8, 1999); *Aluise v. Nationwide Mut. Fire Ins. Co.*, 625 S.E.2d 260, 268-69 (2005); *see also 21st Century N. Am. Ins. Co. v. Wolfington*, 892 F. Supp. 2d 692, 699 (E.D. Pa. 2012) (citing *State Farm Fire and Cas. Co. v. Brewer*, 914 F.Supp. 140, 142 (S.D. Miss. 1996) (noting the law is "'virtually unanimous' that damages flowing from misrepresentation in home sales 'have no basis in property damage' but are 'economic and contractual in nature and as such do not fall within the scope of coverage' of typical homeowners' insurance policy")).

policies. *Houston*, 830 S.W.2d at 156. "We hold that exposure to 'fraudulent promises, false representations, and untrue statements' does not, as a matter of law, fall within the plain meaning of the definition of 'occurrence.'" *Id*.

In *Safeco Ins. Co. of America v. Andrews*, a seller's misrepresentations about the condition or defects of the property to be sold were held not to fall within the definition of occurrence. *Safeco*, 915 F.2d at 502. In the underlying case giving rise to Safeco's declaratory judgment action, the plaintiff, Kandace Kuehl, was seeking damages for Andrews's alleged negligence in failing to inspect and inform Kuehl of defects in the property and for misrepresentation "materially affecting the value or desirability" of the property. *Id*. at 501 The *Safeco* court held that

> Kuehl's claims do not expose Andrews to liability for any damage to tangible property, but rather for economic loss resulting from Andrews's alleged failure to discover and disclose facts relevant to the property's value and desirability. Such harm is outside the scope of the policy. *See Allstate Insurance Co. v. Miller*, 743 F.Supp. 723 (N.D. Cal. 1990). Although the defective condition of the property is an element of Kuehl's claims, the defects cannot, even when interpreting the policy broadly, be considered the cause of Kuehl's damages. **The cause of the damage was Andrews's alleged misrepresentations, which are not an "occurrence"** or a "peril insured against" under the terms of the policy. There is, therefore, no potential for liability that arguably comes within the scope of the insurance coverage provided by Safeco.

*Id*. at 502. (emphasis added). The same conclusion was reached in *Nat'l Fire Ins. of Hartford v. C. Hodges & Associates, PLLC*, 825 F. Supp. 2d 792, 797-98 (W.D. Tex. 2011), where the court found a developer's allegedly negligent misrepresentations to purportedly induce tenants to sign leases were not an "occurrence" as that term was defined by the policies in question.

The Supreme Court of Appeals of West Virginia came to a similar conclusion in *Aluise v. Nationwide Mut. Fire Ins. Co.*, 625 S.E.2d 260 (2005). The Supreme Court of Appeals of West Virginia found absent policy language to the contrary, a homeowner's policy defining an "occurrence" as "bodily injury or property damage resulting from an accident" does not provide coverage for an insured homeowner who is sued by a home buyer for economic loss caused because the insured negligently or intentionally failing to disclose defects in the home. *Id*. at 269. This conclusion was based in part on the following:

> It has been recognized that courts "are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis [as] property damage; rather, the only cognizable damages from such torts

are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowners] policies[.]" *State Farm Fire and Cas. Co. v. Brewer*, 914 F. Supp. 140, 142 (S.D. Miss.1996) (citing *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500 (9th Cir.1990)). *Accord Allstate Ins. Co. v. Morgan*, 806 F.Supp. 1460 (N.D.Cal.1992); *Allstate Ins. Co. v. Chaney*, 804 F.Supp. 1219 (N.D. Cal.1992); *Allstate Ins. Co. v. Hansten*, 765 F.Supp. 614 (N.D. Cal.1991); *State Farm Fire and Cas. Co. v. Gwin*, 658 So.2d 426 (Ala. 1995); *Devin v. United Servs. Auto. Assoc.*, 6 Cal.App.4th 1149, 8 Cal.Rptr.2d 263 (1992); *Dixon v. National Am. Ins. Co.*, 411 N.W.2d 32 (Minn. App. 1987); *Qualman v. Bruckmoser*, 163 Wis.2d 361, 471 N.W.2d 282 (1991).

*Aluise* at 268.

The reasoning and holding in *Augenblick v. Nationwide Ins. Co.*, No. CIV. A. 99-3419, 1999 WL 975118 (E.D. Pa. Oct. 8, 1999), also supports our conclusion that the Maxwells' alleged misrepresentations do not constitute an occurrence as the term is defined in the Erie policy. In *Augenblick*, the insured sought to compel Nationwide to defend and indemnify her in a suit that arose from the sale of her home. *Id*. at *1. As is the case before us in this appeal, in *Augenblick*, the insured had sold real property to buyers, who subsequently sued the insured claiming that she concealed defects in the property and misrepresented its true condition. *Id*. The buyers sued the insured under several theories, including negligent misrepresentation premised upon the buyers' allegations that the insured's false representations about the property were negligently made and her failure to disclose material defects constituted negligent conduct. *Id*. The Eastern District of Pennsylvania ruled upon a declaratory judgment action that the question really is "whether a negligent misrepresentation made by a seller to a buyer qualifies as an 'occurrence.'" *Id*. at *4. The *Augenblick* court's analysis of that question is as follows:

It appears at first glance that a suit alleging negligent misrepresentation is not the kind of contingency for which one purchases a homeowner's insurance policy. A homeowner's policy is usually purchased as protection against chance events that cause bodily injury to the insured or another party, or property damage to the insured home.

Plaintiff argues that liability insurance may be triggered by allegations of negligent misrepresentation. This Court accepts the Plaintiff's contention that there is a difference between fraudulent misrepresentation and negligent misrepresentation under Pennsylvania law. *See, Kerrigan v. Villei*, 22 F.Supp. 419 (E.D.Pa.1998). While that distinction may be important for the Migachevs when proving their case, its importance is

diminished in the context of determining whether the misrepresentation is an 'accident'.

Essentially, this Court finds that Nationwide has no obligation to defend Ms. Augenblick based on a charge of Negligent Misrepresentation because any damage arises out of a breach of contract, not from an accident. Ms. Augenblick entered a contract that required her to present to the Migachevs a reasonably sound house. According to the Underlying Complaint, she either intentionally or negligently failed to do this. In other words, she breached the contract. The purpose and intent of an insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking. *See, Redevelopment Authority of Cambria County v. Intern. Ins. Co.*, 685 A.2d 581, 588 (Pa. Super. 1996). Ms. Augenblick is attempting to convert her insurance policy into a performance bond that not only protects her from liability for damages directly arising from the home, but also from contracts she enters to dispose of the property. Such coverage cannot be reasonably expected by the insured. *See, Cambria County*, 454 Pa. Super. at 591.

The Migachevs' suit does not refer to the actual structural damage of the property, but to the economic loss caused by the intentional or negligent misrepresentations of Ms. Augenblick. The contract required truthful representations by Ms. Augenblick. If she failed to comply with the terms of this contract, whether intentionally or negligently, she may have breached the contract. The fact that she may have breached the contract only through negligence does not transform this case into a tort action for damage while Ms. Augenblick owned the property. *See, Snyder Heating Co. Inc. v. PMA Ins. Co.*, 715 A.2d 483 (Pa. Super. 1998).

*Augenblick*, 1999 WL 975118, at *4-5.

As the *Augenblick* court noted, a homeowner's policy is purchased to protect against chance events that cause property damage to the home or bodily injury to the insured or a third party. Therefore, it is fair to conclude that an action alleging negligent misrepresentation is not the sort of contingency for which one purchases a homeowner's policy.

We are also persuaded by the reasoning of the Louisiana Court of Appeal in *Lawyer v. Kountz*, the facts of which are also similar to the case at bar, which opined that "[t]o find coverage existed in this case would be to find that based on an act of sale, a homeowner's insurer becomes the warrantor of the condition of the insured property.

This is not the type of coverage which is contemplated by these homeowner's policies . . . ." *Lawyer v. Kountz,* 716 So.2d 493, 498 (Louis Ct. App. 1998).

We acknowledge, as the Maxwells correctly note in their brief, that there are jurisdictions that differ with the above holdings; however, we have concluded that the decisions from those jurisdictions are distinguishable and unpersuasive. The cases in which the Maxwells rely opine that negligent misrepresentation is an accident within the meaning of a liability insurance policy. Here, we are not determining whether negligent misrepresentation is an accident but rather, whether the alleged misrepresentations by the Maxwells *caused* the damage to the property. We have determined the misrepresentations did not cause the damage; therefore, the cases the Maxwells cite are unpersuasive.

For the foregoing reasons, we hold that the Chapmans' complaint does not state a claim for property damage that resulted from an occurrence as that term is defined in the Erie policies. Therefore, the Maxwells have no coverage under the Erie Policies for the claims asserted against them by the Chapmans, and as a result, Erie owes no duty to defend or indemnify the Maxwells in that action. We, therefore, reverse the judgment of the trial court as it pertains to the claims of "negligence" and "negligent misrepresentation" and remand with instructions for the trial court to enter summary judgment in favor of Erie, finding Erie is under no duty to defend the Maxwells against the Chapmans' claims for "negligence" and "negligent misrepresentation."

## IN CONCLUSION

Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellees, Gary H. Maxwell and Lucretia H. Maxwell.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 11 -