■ STANLEY A. SYVERTSEN et al., Appellants, v GREAT AMERICAN INSURANCE COMPANY et al., Respondents. [700 NYS2d 289] —Peters, J. Appeals (1) from an order of the Supreme Court (Ingraham, J.), entered August 21, 1998 in Otsego County, which granted defendants' motions for summary judgment and declared that they were not obligated to defend or indemnify plaintiffs in a Federal action, and (2) from two amended judgments entered thereon.

Plaintiffs purchased a building in November 1972 that had been operated as a college fraternity house in the City of Oneonta, Otsego County. In March 1987, an inspection of the premises resulted in a finding of 41 violations of the City's Housing Code, ordered to be repaired within 30 days of receipt of the notice of violation. It is alleged that the notice further contained a statement that the electrical wiring violations listed on a report of the New York Board of Fire Underwriters, dated June 19, 1985, had never been reinspected as corrected and that such violations were continually cited on inspection notices to plaintiffs between June 19, 1985 and March 10, 1987.

Between March 10 and July 27, 1987, plaintiffs purportedly made certain repairs on the building in an attempt to obtain a certificate of compliance from the City for the purpose of facilitating a sale. After the issuance of the notice of violation but prior to a sale, the City Housing Board of Appeals, then

chaired by plaintiff Stanley A. Syvertsen,[1] granted variances to plaintiffs with respect to certain code requirements cited in the notice of violation. In July 1987, a certificate of compliance was issued. At or about such time, plaintiffs entered into an agreement with a corporation to sell these premises and said contract was assigned to Margaret Orezzoli, who is not a party to this action. Orezzoli purchased this building in reliance on the certificate of compliance and the representation by plaintiffs that the building was in habitable condition.

After taking possession, Orezzoli discovered that most of the code violations had not been remedied and that the building was in a general state of disrepair. The City's Code Enforcement Officer thereafter issued a series of inspection reports, beginning July 29, 1988, which alleged numerous old and new violations of various codes, laws and regulations. Later it revoked the certificate of compliance and the City Zoning Board of Appeals terminated the prior nonconforming use of the building as a fraternity house.

In July 1990, Orezzoli commenced an action against plaintiff and others[2] in the United States District Court for the Northern District of New York alleging causes of action in common-law fraud, civil conspiracy and the violation of her civil rights under 42 USC § 1983 (hereinafter the *Orezzoli* action). As to these plaintiffs, Orezzoli charged a civil conspiracy, fraudulent misrepresentation and, as to Syvertsen, a violation of her constitutional right to due process and equal protection based upon his membership in and acts undertaken by the City's Housing and Zoning Boards of Appeal.

Upon their receipt of the complaint in the *Orezzoli* action, plaintiffs requested that their insurers—defendant Utica Mutual Insurance Company, defendant Great American Insurance Company and defendant Royal Insurance Company of America—defend the action. All three disclaimed coverage, contending that under the terms of the relevant policies they had no obligation to defend or indemnify. Plaintiffs thereafter commenced the instant action seeking a recovery for defense costs and indemnification for the judgment recovered by Orez-

1. At all relevant times, Syvertsen was either the chairperson or a member of the City Housing Board of Appeals and the City Zoning Board of Appeals.

2. The City, the City Zoning Board of Appeals, the City Housing Board of Appeals and Peter Friedman, the City's Code Enforcement Officer, were also named as defendants.

zoli in the Federal action.[3] After issue was joined, defendants each filed motions for summary judgment which were granted. This appeal emanates from said order and from the two amended judgments entered thereon.

Recognizing the exceedingly broad nature of the duty to defend as compared to the duty to indemnify (see, *Curtis v Nutmeg Ins. Co.*, 204 AD2d 833, 834, *lv dismissed* 84 NY2d 1027; see also, *Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d 66; *Colon v Aetna Life & Cas. Ins. Co.*, 66 NY2d 6), the duty to defend will be found " 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be [citations omitted]' " (*Curtis v Nutmeg Ins. Co.*, supra, at 834, quoting *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310). "A party's characterization of the causes of action alleged * * * are not controlling * * * [;] we * * * determine the nature of the claims based upon the facts alleged 'and not the conclusions which the pleader draws therefrom' " (*Curtis v Nutmeg Ins. Co.*, supra, at 834-835, quoting *County of Columbia v Continental Ins. Co.*, 189 AD2d 391, 394, *lv denied* 82 NY2d 841).

Within these parameters, we review the terms of the Utica Mutual policy which acknowledges a duty to defend and indemnify its insured in any suit arising out of "bodily injury or property damage" caused by "an occurrence". Since "an occurrence" is defined as "an accident * * * which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured", we find, upon our review of the totality of the complaint in the *Orezzoli* action, that the allegations pertaining to fraudulent misrepresentation regarding concealment of the condition of the building cannot be viewed as unintended or unexpected from plaintiffs' "standpoint". Finding Orezzoli's damages to be the "direct and natural consequence of [their] intentional act[s]" (*Ford Nursing Home Co. v Fireman's Ins. Co.*, 86 AD2d 736, 738, *affd* 57 NY2d 656) and therefore deemed, as a matter of law, "intentionally caused" within the meaning of the policy (see, *Allstate Ins. Co. v Mugavero*, 79 NY2d 153, 161), we can find no duty to defend or indemnify plaintiffs on any of the claims alleged, including those of constitutional dimensions (see, *Sweet Home Cent. School Dist. v Aetna Commercial Ins.*

---

3. In May 1992, a trial was held which resulted in a jury verdict in favor of Orezzoli on her cause of action against plaintiffs alleging common-law fraud. The judgment was affirmed on appeal to the Second Circuit Court of Appeals. The amount recovered, with interest, is approximately $93,000.

Co., 263 AD2d 949; *Town of Moreau v Orkin Exterminating Co.*, 165 AD2d 415; *County of Broome v Aetna Cas. & Sur. Co.*, 146 AD2d 337, *lv denied* 74 NY2d 614).

Turning to the policy issued by Great American, an "umbrella policy" covering liability in excess of any primary policy covering the same claim, we note that Utica Mutual is named on this policy as plaintiffs' comprehensive general liability carrier with a primary policy limit not exceeded by the award of damages in the *Orezzoli* action. Despite no coverage under the Utica Mutual policy, the provisions of the Great American policy provide for a defense under these circumstances so long as the "occurrence" constitutes "an event or happening * * * neither expected nor intended from the standpoint of the insured". Like the Utica Mutual policy, however, it further specifies that no coverage will be provided for "any liability for any loss, damage or expense caused intentionally or at the direction of the insured". Following our prior reasoning, we find the allegations of fraud to be intentionally caused, thereby vitiating any obligation of Great American to provide a defense (*see, Allstate Ins. Co. v Mugavero, supra*; *Pistolesi v Nationwide Mut. Fire Ins. Co.*, 223 AD2d 94, *lv denied* 88 NY2d 816; *Town of Moreau v Orkin Exterminating Co., supra*).

Addressing the constitutional violations propounded against Syvertsen, we note that the Great American policy was issued to him in his individual capacity and that it specifies that no coverage will be provided for civil rights claims predicated upon activities taken "under color of state law" (42 USC § 1983). Even if these acts were deemed to arise out of his individual conduct, regardless of his municipal function, we would still find no duty to defend since coverage is also excluded for "personal injury claimed by any person directly or indirectly related to the violation of any Civil Rights Act or Constitutional Rights".

Nor can we find error in the determination that by suing plaintiffs in their individual capacities rather than in their corporate identities, Royal did not have a duty to defend or indemnify them based upon its issuance of a commercial general liability policy to Suncrest Transportation, Inc. and its corporate officers. As to its second policy to Suncrest, a commercial catastrophic liability policy with "VIP Shield Personal Catastrophic Liability Endorsements" naming plaintiffs as individually insured, its terms provide that coverage will be triggered only after the underlying insurance coverage had been determined to be applicable. As we have already determined that the underlying policy would not be applicable here, no duty to defend or indemnify plaintiffs can be found.

" ' " "[C]onclud[ing] as a matter of law that there is no possible factual or legal basis on which [these insurers] might eventually be held to be obligated to indemnify [the plaintiff] under any provision of the insurance polic[ies]' " ' " (*Erdman v Eagle Ins. Co.*, 239 AD2d 847, 849, *appeal dismissed and lv denied* 90 NY2d 926, quoting *Jubin v St. Paul Fire & Mar. Ins. Co.*, 236 AD2d 712, 714, quoting *Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d 419, 424), we affirm the order and amended judgments of Supreme Court.

Mikoll, J. P., Mercure, Yesawich Jr. and Graffeo, JJ., concur. Ordered that the order and amended judgments are affirmed, with costs.