◾ Town of Massena, Plaintiff, v Healthcare Underwriters Mutual Insurance Company, Defendant and Third-Party Plaintiff-Respondent. Massena Memorial Hospital et al., Third-Party Defendants-Appellants. [834 NYS2d 736]—

Lahtinen, J. Appeal from an order of the Supreme Court (Demarest, J.), entered November 2, 2005 in St. Lawrence County, which, upon renewal, granted defendant and third-party plaintiff's motion for summary judgment.

The facts in this declaratory judgment action involving insurance coverage are set forth more fully in earlier appeals (281 AD2d 107 [2001], *mod* 98 NY2d 435 [2002] [hereinafter referred to as *Massena I* and *Massena II*, respectively]). The underlying action, which is pending in federal court, is explained in decisions from that court (*Franzon v Massena Mem. Hosp.*, 977 F Supp 160 [ND NY 1997]; *see Franzon v Massena Mem. Hosp.*, 89 F Supp 2d 270, 273 [ND NY 2000] [providing citations to reported decisions in the underlying action]). Briefly, in 1997, Olof Franzon, a physician, and his professional corporation (hereinafter the Franzon plaintiffs) commenced the underlying federal court action alleging several causes of action against Massena Memorial Hospital, its governing committees and members of the committees (hereinafter the Franzon defendants). The Franzon plaintiffs contended that, in retaliation for Franzon having advocated an enhanced role for nurse-midwives at the hospital, the Franzon defendants engaged in tortious conduct including defamation, violation of civil rights, interference with business relations and interference with contract.

In 1998, plaintiff commenced the current action against, among others, Healthcare Underwriters Mutual Insurance Company (hereinafter HUM), Federal Insurance Company and Physicians Reciprocal Insurers seeking to require them to defend and indemnify the Franzon defendants. HUM then brought a third-party action against the Franzon defendants. As is relevant here, several of these insurers eventually moved for summary judgment asserting no coverage because the underlying action was premised upon intentional conduct by the Franzon defendants. Although Supreme Court determined that these three insurers were not entitled to summary judgment, we held in *Massena I* that they were. The Court of Appeals, however, granted leave and modified, holding that HUM had a duty to defend. In its decision, the Court of Appeals noted that HUM's contract with the hospital involved three policies: the personal injury liability (hereinafter PIL) policy, the hospital professional liability (hereinafter HPL) policy, and the comprehensive general liability (hereinafter CGL) policy. Since it found that HUM had a duty to defend under the PIL policy, it was "unnecessary for [the Court] to discuss the HPL and the CGL policies" (98 NY2d 435, 446 [2002]).

Thereafter, the Franzon plaintiffs stipulated to discontinue all of their causes of action in the underlying federal suit except the one premised on the 1st Amendment and 42 USC § 1983, which asserted Franzon's civil rights had been violated through a concerted campaign of retaliation and harassment to punish him for his comments. This discontinuance prompted HUM to renew its motion for summary judgment arguing that the discontinued causes of action extinguished the basis for the Court of Appeals' holding and revived this Court's dismissal in *Massena I* as to HUM. In opposition, the Franzon defendants submitted, among other things, affidavits from their peer review committee members denying any intent to injure Franzon. Supreme Court, concluding that the portions of our decision in *Massena I* not modified by the Court of Appeals remained the law of the case, granted HUM's motion. The Franzon defendants appeal.

Initially, we are unpersuaded that the law of the case doctrine applies on appeal and that our decision in *Massena I* mandates that we now affirm. The law of the case doctrine generally precludes relitigating an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue (*see People v Evans*, 94 NY2d 499, 502-504 [2000]; *Bennett v Nardone*, 298 AD2d 790, 791 [2002], *lv dismissed* 99 NY2d 579 [2003]). The doctrine is " 'amorphous' in that it 'directs a court's discretion,' but does not restrict its authority" (*see People v Evans, supra* at 503, quoting *Arizona v California*, 460 US 605, 618 [1983]). As such, a court may revisit its prior ruling under certain narrow circumstances, such as a change in controlling authority (*see State of New York v Speonk Fuel*, 307 AD2d 59, 62-63 [2003], *affd* 3 NY3d 720 [2004]).

Here, our prior ruling as to HUM was reversed by the Court of Appeals in *Massena II* and that Court reinstated Supreme Court's order declaring a duty to defend by HUM (98 NY2d 435, 437 [2002], *supra*). We agree with HUM that the Court of Appeals' analysis in *Massena II* was directed at one of the three HUM policies (i.e., the PIL policy) and only as to how that policy related to the defamation cause of action. However, having found a basis for the duty to defend, it was unnecessary for the Court of Appeals to address the two other HUM policies or the then-hypothetical situation that the Franzon plaintiffs might discontinue some of their causes of action, including the one for defamation. The fact that the Franzon plaintiffs have now limited their causes of action does not, in our view, serve as a predicate under the law of the case doctrine for this Court to conclude that it must reinstate a result previously reversed by

the Court of Appeals. Moreover, even if we ascribed to such a view, we would exercise our discretion and revisit the coverage issue in this case since a logical implication of the Court of Appeals' *Massena II* decision, as well as another decision subsequent thereto (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131 [2006], *revg* 21 AD3d 1155 [2005]), is that our interpretation and application of the duty to defend was not as broad as it should have been.

Next, we turn to the issue of coverage. "[T]he duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage' " (*id.* at 137, quoting *Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 648 [1993]). Policies providing for a defense are, in essence, "litigation insurance" and, accordingly, the "insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course" (*Automobile Ins. Co. of Hartford v. Cook, supra* at 137; *see* 98 NY2d 435, 444 [2002]*, supra*). " 'If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be' " (*Automobile Ins. Co. of Hartford v Cook, supra* at 137, quoting *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 670 [1981]). We have previously explained that "[a] party's characterization of the causes of action alleged in a complaint are not controlling" as "we seek to determine the nature of the claims based upon the facts alleged 'and not the conclusions which the pleader draws therefrom' " (*Curtis v Nutmeg Ins. Co.*, 204 AD2d 833, 834 [1994], *lv dismissed* 84 NY2d 1027 [1995], quoting *County of Columbia v Continental Ins. Co.*, 189 AD2d 391, 394 [1993], *affd* 83 NY2d 618 [1994]).

Before looking at the specific HUM policies, it merits considering the nature of the risk being insured since a policy should be interpreted in light of the reasonable expectations and purposes implicated (*see Atlantic Cement Co. v Fidelity & Cas. Co. of N.Y.*, 91 AD2d 412, 418-419 [1983], *affd* 63 NY2d 798 [1984]; *see also Automobile Ins. Co. of Hartford v Cook, supra* at 138 ["a reasonable insured under these circumstances would have expected coverage under the policy"]). As is relevant here, coverage included the work of peer review committees. Such committees consider complaints about medical care and determine whether to limit hospital privileges of doctors (*see* Public Health Law § 2805-j [1] [a]; 10 NYCRR 405.6). Because of the readily apparent sensitive nature of such review and the need for candor that is not inhibited by a fear of litigation, the Legislature has af-

forded qualified statutory immunity to members of such committees (see e.g. Public Health Law § 2805-m [3]). Committee members are protected by this statutory immunity unless they provide "information which is untrue and communicated with malicious intent" (Public Health Law § 2805-m [3]). It follows that an insurer covering committee members could anticipate allegations in litigation attempting to avoid immunity-based dismissal, and members of those committees would reasonably expect litigation coverage for their narrow exposure.

Under the HPL policy, HUM contracted to cover "injury to any person arising out of the rendering of . . . professional services," including "service by any person as a member of a formal accreditation or similar professional board or committee of the named insured," and HUM had the "duty to defend any suit against the insured . . ., even if any of the allegations of the suit are groundless, false or fraudulent." Many of the allegations remaining in the federal lawsuit pertain to actions taken by the Franzon defendants when exercising their statutory obligation to review complaints regarding Franzon. This falls within the language of the HPL policy with respect to a duty to defend. The fact that some of the complained-of decisions were made corporately, as part of the committee process, supplying a basis to allege a conspiracy to violate civil rights does not—as urged by HUM—extinguish the duty to defend (see generally Curtis v Nutmeg Ins. Co., supra). We further note that the HPL policy (unlike the CGL policy) did not require an "occurrence." Nor was there a specific provision excluding from coverage claims alleging civil rights violations (cf. 98 NY2d 435, 446-447 [2002], supra; Syvertsen v Great Am. Ins. Co., 267 AD2d 854, 857 [1999]). While a trial in the underlying federal action could result in a determination revealing no indemnification obligation, we nevertheless find HUM has a duty to defend under the HPL policy. Having found a duty to defend in the HPL policy, it is not necessary to discuss the other HUM policies.

Cardona, P.J., Crew III, Spain and Kane, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.