[38 NYS3d 129]

Sandra Delgado et al., Appellants, v City of New York et al., Respondents, et al., Defendants.

First Department, September 27, 2016

*Law Offices of Arnold E. DiJoseph, P.C.*, New York City (*Arnold E. DiJoseph* and *Mitchel Ashley* of counsel), for appellants.

*Zachary W. Carter, Corporation Counsel*, New York City (*Victoria Scalzo* and *Deborah A. Brenner* of counsel), for the City of New York, respondent.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, New York City (*Patrick J. Lawless* of counsel), for New York City Housing Authority and others, respondents.

*Ronald P. Berman*, New York City, for Brian Washington, respondent.

### OPINION OF THE COURT

Acosta, J.

This case gives us the opportunity to emphasize that when an issue is specifically decided on a motion for summary judgment, that determination is the law of the case. As such, the trial court, as well as the parties, is bound by it "absent a showing of subsequent evidence or change of law" (*Carmona v Mathisson*, 92 AD3d 492, 492-493 [1st Dept 2012]). Applying this rule to the case at hand, we specifically found in *Delgado v City of New York* (86 AD3d 502, 508 [1st Dept 2011] [*Delgado I*]), that the no-knock search warrant at issue was not valid.

Thus, the trial court was bound by that determination absent the introduction of subsequent evidence to show otherwise. The evidence that was introduced at trial on the validity of the warrant, however, was not significantly different from what was previously before the court on the motion for summary judgment. Accordingly, the trial court erred in deeming the warrant valid and granting defendants' motion for a directed verdict in their favor.

This action arises from the execution of a "no knock" search warrant at the Delgado plaintiffs' New York City Housing Authority (NYCHA) apartment in the Bronx sometime after midnight. Plaintiff mother and her six children were sleeping in their two-bedroom apartment when a team of about 12 officers knocked down the door and entered the apartment. The warrant was issued on May 19, 1994, based on an affidavit prepared by police officer Robert Masiello. Masiello based his assertions upon information provided by a confidential informant, alleged to be known to him, who stated that he or she had been inside the apartment for purposes of obtaining vials of crack to sell on the street. The informant gave Masiello instructions on how to get to the apartment. He or she told Masiello that he or she last visited the apartment the night before and that while in the apartment, "Green Eyes," a light skinned Hispanic man about five feet, eight inches tall, took a brown bag from the bedroom, went to the kitchen and removed a "row of vials." The informant also saw additional vials of crack and saw Green Eyes remove a "9 millimeter automatic tech" and a "9 semi-automatic machine pistol" from the bedroom and place them on the kitchen table.

The same date the warrant was issued, defendant police officer Brian Washington completed a follow-up report on his debriefing of the informant, and noted that the informant stated that a Hispanic woman, known as "Shorty," and a small female infant also resided in the apartment, which had two bedrooms facing the back of the building. When the search warrant was executed, neither Green Eyes nor Shorty was found in the apartment. This action for personal injury and property damage ensued.

This is the second time this case has come up for our review. In *Delgado I*, this Court was "disquieted by the manner in which the search was executed. Upon entering the apartment, the police encountered not 'Green Eyes' and 'Shorty' with an infant, as described by the informant, but plaintiff mother and

her six sleeping children. At that point, a reasonable police officer should have realized that an error had been made" (*id.* at 510). Instead, the officers pushed some of the plaintiffs down to the ground and placed guns to their heads, handcuffed all of the occupants except for the two youngest, and held them "in the hallway . . . for three hours while the officers searched the apartment, overturning furniture, slashing sofas and mattresses, and destroying property in the bedrooms including the children's posters and baseball cards" (*id.* at 505-506).

The Court also modified the order (Patricia Williams, J.), entered June 13, 2008, which, among other things, had granted so much of defendants' summary judgment motions as sought dismissal of the complaint against the individual officers who merely executed the warrant, on the ground of qualified immunity, but held that such protection did not apply to defendants Nicholas Witkowich and Brian Washington, the officers who initiated the issuance of the search warrant (*id.* at 510). This Court modified the order to the extent of dismissing the action against defendant "James" Masiello, who had been improperly named, since "Robert" Masiello was the officer involved in obtaining the search warrant, and dismissing the 42 USC § 1983 claim against NYCHA (*id.* at 511).

In affirming so much of the order as denied the defendants' motions to dismiss the complaint, this Court found that the police had not satisfied either of the two prongs of the *Aguilar-Spinelli* test (*Aguilar v Texas*, 378 US 108 [1964]; *Spinelli v United States*, 393 US 410 [1969]), for evaluating hearsay information provided by an undisclosed informant (*Delgado I*, 86 AD3d at 507-509). "The police had no basis to believe that the . . . informant was reliable . . . [H]e or she had never before provided information leading to an arrest" (*id.* at 508).

The Court found that "[o]n this record, . . . we cannot state that the informant's statements were sufficiently contrary to his or her penal interest so as to establish reliability under the first prong of *Aguilar-Spinelli*" (*id.* [citation omitted]). This Court further found that "no corroborative verification whatsoever was performed by the police prior to issuance of the warrant" (*id.* at 509). This Court also noted that the record did not indicate whether "the officers conducted an investigation to corroborate the information . . . prior to seeking a search warrant" (*id.* at 504).

This Court also found that the second prong of *Aguilar-Spinelli*, "the informant's basis of knowledge, was never

established by corroborative details of such quantity and quality as to be indicative of criminality" (*id.* at 509 [citation omitted]).

In finding that Witkowich and Washington, who initiated the issuance of the search warrant, were not entitled to qualified immunity, this Court found that they "did little, if anything, to establish the reliability of the . . . informant or the information supplied by him or her" (*id.* at 510).

Prior to trial, plaintiffs moved, in limine, to preclude defendants from arguing or presenting evidence indicating that they had a sufficient basis for obtaining or executing the search warrant, on the ground that this Court had already found that the warrant was not properly issued, which determination was the "law of the case." That motion was denied.

The case proceeded to trial, where evidence regarding the issuance of the warrant was introduced. Specifically, the trial evidence included testimony that an assistant district attorney (ADA) had interviewed the confidential informant and prepared Officer Masiello's affidavit, which was used to obtain the warrant, testimony that the informant appeared before, and was likely questioned by, the court prior to the issuance of the warrant, testimony that surveillance and a controlled buy were not feasible and testimony that the informant's statement as to purchasing drugs with intent to sell them implicated him or her in a more serious crime than that for which he or she had been arrested.

At the close of evidence, the court granted the City, NYCHA, Witkowich and Washington's motions for a directed verdict, stating that it could not "apply a law [or decision] that [it thought was] incorrect" (referring to *Delgado I*), and that *Delgado I* was decided "in a vacuum." We now reverse.

In *Delgado I*, we specifically concluded that the no-knock search warrant was not valid. Our conclusion was not "obiter dictum," as the dissent contends.

■ We did not find that defendants failed to establish a prima facie case as to the validity of the warrant or that there were issues of fact regarding the issue.[1] As such, our conclusion in *Delgado I* is the law of the case (*Carmona*, 92 AD3d at 492-

---

1. Although generally, "[a] denial of a motion for summary judgment is res judicata of nothing except that summary judgment was not warranted" (David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:21; *see also Sackman-Gilliland Corp. v Senator Hold-*

493; *cf.* CPLR 3212 [g]; *E.B. Metal & Rubber Indus. v County of Washington*, 102 AD2d 599, 603 [3d Dept 1984], citing Siegel, NY Prac § 285 at 341 [1978]; *Garcia v Tri-County Ambulette Serv.*, 282 AD2d 206, 207 [1st Dept 2001]; *Deutsche Bank Natl. Trust Co. v Donohue*, 50 Misc 3d 1221[A], 2016 NY Slip Op 50222[U], *5 [Sup Ct, Suffolk County 2016]).

As we noted in *Carmona* (92 AD3d at 492-493):

> " ' "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court . . . [and] operates to foreclose reexamination of [the] question absent a showing of subsequent evidence or change of law" ' (*Kenney v City of New York*, 74 AD3d 630, 630-631 [2010], quoting *J-Mar Serv. Ctr., Inc. v Mahoney, Connor & Hussey*, 45 AD3d 809 [2007]). Under the doctrine, parties or their privies are 'preclude[d from] relitigating an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue' (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 40 AD3d 1177, 1179 [2007]; *see also Matter of Atlantic Mut. Ins. Co. v Lauria*, 291 AD2d 492, 493 [2002])."

In many ways, this case is very similar to *Brownrigg v New York City Hous. Auth.* (29 AD3d 721 [2d Dept 2006]). There, plaintiff's motion for summary judgment on liability was denied. However, prior to the start of trial, the court granted plaintiff summary judgment on that very issue. In reversing, the Second Department noted that

> "[t]he grant of summary judgment to the plaintiff on the issue of liability at the beginning of trial was based on the same facts and law as the prior order of June 24, 2003, which denied summary judgment to the plaintiff on the issue of liability. As the June 24, 2003 order was the law of the case, and there were no extraordinary circumstances permitting the Supreme Court to ignore the order, the Supreme Court erred in granting the plaintiff summary judgment on the issue of liability at that juncture in the proceeding, when no evidence had

*ing Corp.*, 43 AD2d 948 [2d Dept 1974], *lv denied* 34 NY2d 515 [1974]), as noted above, we specifically decided the issue in *Delgado I*.

been proffered, introduced, or admitted at trial" (*Brownrigg*, 29 AD3d at 722 [citations omitted]).

Similarly, here, defendants were denied summary judgment based on our conclusion that the information provided by the informant and the subsequent police investigation was insufficient to issue a search warrant. Although evidence was introduced at trial on this issue, it was not significantly different than what was presented in the motion for summary judgment. That is, the fact that an assistant district attorney helped prepare Masiello's affidavit did not imbue the informant with additional reliability or add to his basis of knowledge. Moreover, the affidavit was before this Court in *Delgado I* when we decided that it was insufficient to justify the warrant. It was also known, before trial, that a justice of the Supreme Court granted the application for the warrant. In addition, it is not clear that the informant was examined by the court, only that he or she was likely questioned by the court (*see People v Kaplan*, 174 AD2d 489 [1st Dept 1991] [*Aguilar-Spinelli* test not applicable since the confidential informant was examined in person by the magistrate]).[2]

Last, there was evidence in *Delgado I* that the informant had purchased vials of crack from the alleged location to sell on the street, and yet we found that these facts did not establish the informant's reliability:

> "Defendants assert that the informant's statements were against penal interest, and therefore, reliable. On this record, however, we cannot state that the informant's statements were sufficiently contrary to his or her penal interest so as to establish reliability under the first prong of *Aguilar-Spinelli* (*see People v Burks*, 134 AD2d 604, 605 [2d Dept 1987] [the informant's statement that he had, on unspeci-

---

**2.** Captain Witkowich, who was in charge of the operation, testified that a judge has the option to speak to the informant, but he did not state whether in this case the court actually spoke to the informant before issuing the warrant. Likewise, Officer Washington testified that the ADA interviewed the informant and that the court "might have interviewed [him or her] also." On cross-examination, however, he claimed, contrary to Witkowich's assertion that a judge has the option to speak to the informant, that a judge would always interview a confidential informant in connection with a search warrant application. He was then asked:

"Q: But this time the affidavit was submitted, the interview was done and the judge signed the warrant, correct?

"A: Correct."

fied past occasions, purchased cocaine from the defendant, was not sufficiently against penal interest to establish reliability]). According to the affidavit in support of the search warrant, Doe informed that 'on other occasions' he or she had been inside the premises for the purpose of obtaining red top vials from 'Green Eyes' to sell on the street, and that on one occasion, May 18th, he or she had purchased one row of vials to sell on the street. It is not clear, on this record, that this statement, admitting possession of small quantities with intent to sell them on the street, was likely to be used against Doe" (*Delgado I*, 86 AD3d at 508-509).

Given that the additional trial evidence did not add any significant new facts, this Court's prior ruling was still the law of the case (*Brownrigg*, 29 AD3d at 722).

Whether this Court's conclusion regarding the validity of the search warrant in *Delgado I* was erroneously reached is irrelevant. The law of the case precluded the trial court from reexamining the issue (*see Carmona*, 92 AD3d at 492-493), and it was therefore bound by our conclusion regardless of its views on our analysis (*see Matter of LaDelfa*, 107 AD3d 1562, 1563 [4th Dept 2013] ["It is well settled that, until a decision of this Court is modified or reversed by a higher court, . . . the trial court is bound by our decision, regardless of whether our decision was correctly decided" (internal quotation marks and citations omitted)]).

At the very least, the issue as to the validity of the search warrant should have gone before the jury since the additional evidence adduced at trial did not significantly alter our analysis. Instead, acting essentially as an appellate court, the trial court effectively reversed this Court's finding on the validity of the warrant. Significantly, the court had previously stated its belief that the decision in *Delgado I* "was totally contradictory [because it dismissed the action against the officers who executed the warrant and not as to the investigating officer and captain]. A warrant is valid until it is found invalid." There was, however, no contradiction inasmuch as there is a distinction between granting qualified immunity to officers executing what appears to be a facially valid search warrant, and not granting immunity to officers who improperly obtained the warrant. Indeed, we were very clear on that issue in *Delgado I*,

> "The lower court properly determined that only those police officers or other government agents

who executed the no-knock warrant are entitled to qualified immunity. The officers who executed the warrant did so with the understanding that a valid search warrant had been issued. However, the same cannot be said for defendants Witkowich and Washington, who initiated the issuance of the search warrant and did little, if anything, to establish the reliability of the confidential informant or the information supplied by him or her" (86 AD3d at 510).

Accordingly, the trial court erred in granting a directed verdict in defendants' favor at the close of the evidence.

▮ The trial court, however, properly denied plaintiffs' in limine motion to preclude defendants from introducing evidence regarding the validity of the warrant (*Carmona*, 92 AD3d at 492-493 ["the law of the case . . . is binding on the Supreme Court, as well as on the appellate court . . . (and) operates to foreclose re-examination of (the) question *absent a showing of subsequent evidence*" (emphasis added)]; *Brownrigg v New York City Hous. Auth.*, 29 AD3d at 722). Defendants were therefore permitted to introduce evidence at trial on the validity of the search warrant.

Plaintiffs have abandoned all claims against the City, which is not the same entity as NYCHA (*see Torres v New York City Hous. Auth.*, 261 AD2d 273, 275 [1st Dept 1999], *lv denied* 93 NY2d 816 [1999]), since they have not addressed those claims on appeal (*see Edelman v Emigrant Bank Fine Art Fin., LLC*, 89 AD3d 632, 632 [1st Dept 2011]).

We have considered plaintiffs' remaining arguments and find them unavailing.

Accordingly, the judgment of the Supreme Court, Bronx County (Faviola Soto, J.), entered December 9, 2014, to the extent appealed from, dismissing the complaint against defendants New York City Housing Authority, Nicholas Witkowich, and Brian Washington, upon grant of a directed verdict at the close of the evidence, should be reversed, on the law, without costs, and the matter remanded for a new trial.

SAXE, J. (dissenting). The trial court properly (1) denied plaintiffs' in limine motion, and (2) granted a directed verdict in favor of the remaining defendants at the close of evidence, finding that plaintiffs had failed to establish that the warrant was not properly obtained. The law of the case doctrine does

not preclude a trial court from making a necessary finding of fact based upon the evidence before it *after a denial of summary judgment* by a prior bench of this Court, where that bench in its denial of summary judgment exceeded the scope of its assignment by finding facts beyond those necessary to reach its determination.

In the prior appeal in this case, this Court affirmed the denial of defendants' motion for summary judgment (*Delgado v City of New York*, 86 AD3d 502 [1st Dept 2011] [*Delgado I*]). In doing so, it necessarily determined one of two things: either that, based on the record before it, defendants had failed to conclusively establish, as a matter of law, that the "no-knock" search warrant was validly issued and executed, or, that plaintiffs had offered proof in opposition that created a question of fact (*see Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). As the Practice Commentary cited by the majority clearly and categorically states, "A denial of a motion for summary judgment is res judicata of nothing except that summary judgment was not warranted" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C3212:21). In view of the axiom that the court's function on a motion for summary judgment is issue finding, not issue determination (*see Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]), the purported "finding" included in this Court's decision in *Delgado I*, that "the police did not have sufficient independent verification to satisfy the veracity component of *Aguilar-Spinelli*, nor did they possess the requisite knowledge . . . component of the test" (86 AD3d at 508), constituted obiter dictum, in that it was unnecessary for the denial of summary judgment, and therefore is not binding as precedent (*see* Black's Law Dictionary 1240 [10th ed 2014]).[1] As such, it did not constitute the law of the case (*see Friedman v Connecticut Gen. Life Ins. Co.*, 30 AD3d 349, 350 [1st Dept 2006], *mod* 9 NY3d 105 [2007]). The trial court was not precluded from considering and resolving, after the presentation of evidence at trial, the issues regarding the issuance and execution of the warrant, since those issues had not yet been finally determined (*see Holmes v Bronx-Lebanon Hosp. Ctr.*, 128 AD3d 596 [1st Dept 2015]; *Rodriguez v Ford Motor Co.*, 106 AD3d 525, 525-526 [1st Dept 2013]).

Nothing in the cases cited by the majority requires or justifies holding that this Court's purported finding when denying

---

1.  Notably, this Court did not search the record to grant plaintiff summary judgment on the issue of liability.

summary judgment should be treated as the law of the case. In *Brownrigg v New York City Hous. Auth.* (29 AD3d 721, 722 [2d Dept 2006]), a previous denial of summary judgment precluded a subsequent *pretrial grant* of summary judgment; it did *not* preclude a decision on the issue at trial.

Nor does the case of *Carmona v Mathisson* (92 AD3d 492 [1st Dept 2012] [*Carmona II*]) support precluding the trial court here from making its own findings regarding the evidence before it. In *Carmona*, this Court had previously granted summary judgment in favor of one of the defendants, the manufacturer of the Alcon machine that had been used in the cataract surgery performed on the plaintiff, finding no evidence of defective design or manufacture (*see Carmona v Mathisson*, 54 AD3d 633 [1st Dept 2008]). Yet, "the trial court permitted defendants to elicit testimony that the Alcon machine malfunctioned or contained a design defect[,] [and] . . . the court included Alcon on the verdict sheet for the purpose of apportioning liability" (92 AD3d at 492). This Court in *Carmona II* held that giving those issues to the jury constituted reversible error, since they had already been determined on the earlier grant of summary judgment; accordingly, this Court set aside the verdict and remanded for a new trial (*id.* at 492-494). In the case now before us, because this Court affirmed the *denial* of defendant's motion for summary judgment, there is no viable finding of fact to which the law of the case doctrine can apply.

Moreover, the trial court, hearing live testimony rather than merely reading transcribed depositions, affidavits, or other documents, is in the unique position of being able to assess and interpret testimony (*cf. Cioffi-Petrakis v Petrakis*, 103 AD3d 766 [2d Dept 2013], *lv denied* 21 NY3d 860 [2013]). Therefore, although the live testimony before the trial court largely paralleled the content of the submissions on the summary judgment motion, the trial judge as factfinder had greater leeway than the motion court in assessing credibility and drawing inferences from the testimony. So, for example, with regard to whether the warrant court interviewed the informant before signing the warrant, although the submissions on defendants' motion failed to establish as a fact that the warrant judge had interviewed the informant, the trial testimony of Police Officer Brian Washington[2] could properly have formed the basis for a finding by the trial court that the warrant judge did, in fact,

---

2. After testifying that in his experience the judge would have interviewed the confidential informant as well, and only then would the judge sign off on

interview the confidential informant before signing the warrant. That finding would render the *Aquilar-Spinelli* test inapplicable (*see People v Kaplan*, 174 AD2d 489 [1st Dept 1991]).

In any event, even if the *Aguilar-Spinelli* test was applicable, it was satisfied. The reliability of the information was established by the informant's admission, against penal interest, that he had purchased drugs from the apartment, and by his implication in the more serious crime of selling drugs (*see Kaplan*, 174 AD2d at 490). The basis of the informant's knowledge was established by the informant's detailed description of the apartment, and the drugs and weapons alleged to be contained in the apartment, based upon his personal knowledge (*see id.*). At trial, not only did plaintiffs fail to rebut the presumption of validity that attaches to a warrant (*see People v Ortiz*, 234 AD2d 74, 75 [1st Dept 1996], *lv denied* 89 NY2d 941 [1997]), but the trial court had the authority to make findings as to the warrant's validity based on the evidence placed before it.

While no drugs or weapons were recovered from the apartment, which was alleged to be a drug distribution center, it is undisputed that the apartment was the one identified in the warrant, that police found several hidden trap compartments there, and that the drug sniffing dogs reacted positively to two areas in the apartment. Plaintiffs' expert conceded that, even if the officer in charge of the execution of the warrant believed that the apartment was the wrong one, he or she could have reasonably decided to perform a controlled search. Further, defendant Nicholas Witkowich, a retired police captain who was in charge of the NYCHA Police Department narcotics unit at the time of the search, testified that the search for drugs and firearms needed to be performed methodically and that, for the safety of all concerned, the occupants of the premises needed to be secured during the search. Under these circumstances, plaintiffs failed to meet their burden of showing that the execution of the search was objectively unreasonable (*see Liu v New York City Police Dept.*, 216 AD2d 67, 68 [1st Dept 1995], *lv denied* 87 NY2d 802 [1995], *cert denied* 517 US 1167 [1996]; *Simpkin v City of Troy*, 224 AD2d 897, 898 [3d Dept 1996]). Further, since there was no showing at trial that the officers who presented the information to the court for a warrant know-

the warrant or decline to sign it, Washington was asked, "But this time the affidavit was submitted, the interview was done and the judge signed the warrant, correct?" and he answered, "Correct."

ingly misled or provided false information to the judge, individual defendants Nicholas Witkowich and Brian Washington were entitled to the protection of qualified immunity (*id.*).

While the preferred procedure would have been for the trial court to leave the issues of fact for determination by the jury, there was no material issue that required the submission of the case to a jury. Accordingly, the court had the authority to direct a verdict at the close of evidence under CPLR 4401, and its decision should stand.

GISCHE and WEBBER, JJ., concur with ACOSTA, J.; SAXE, J., dissents in a separate opinion in which FRIEDMAN, J.P., concurs.

Judgment, Supreme Court, Bronx County, entered December 9, 2014, reversed, on the law, without costs, and the matter remanded for a new trial.