737 Park Ave. Acquisition LLC v Goldblatt (2019 NY Slip Op 09099)





737 Park Ave. Acquisition LLC v Goldblatt


2019 NY Slip Op 09099


Decided on December 19, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 19, 2019

Renwick, J.P., Gische, Mazzarelli, Moulton, JJ.


10543 154241/13

[*1] 737 Park Avenue Acquisition LLC, Plaintiff-Appellant-Respondent,
v
Laura Goldblatt also known as Laura Goldblatt-Jensen, et al., Defendants-Respondents-Appellants.


Stempel Bennett Claman & Hochberg, P.C., New York (Richard L. Claman of counsel), for appellant-respondent.
Brill & Meisel, New York (Allen H. Brill of counsel), for respondents-appellants.



Order, Supreme Court, New York County (Shlomo Hagler, J.), entered January 4, 2019, which, to the extent appealed from as limited by the briefs, held that the apartment is subject to rent stabilization, denied plaintiff's request for a counter-declaration that defendants had disavowed the apartment as their primary residence, denied plaintiff's motion to dismiss defendants' first counterclaim for tortious interference with prospective economic relations, and granted plaintiff's motion to dismiss defendants' equitable estoppel defense, unanimously modified, on the law, to grant plaintiff's motion to dismiss defendants' first counterclaim for tortious interference with prospective economic relations, and otherwise affirmed, without costs.
This action for a declaratory judgment concerns a dispute whether the defendants, who are siblings, may sublet an apartment in a building located at 737 Park Avenue, New York, New York without complying with applicable rent regulation laws, and without the consent of plaintiff, the new owner of the building. Defendants are the children of Barbara and Jacob Goldblatt, now deceased. In 1958, Mrs. Goldblatt obtained a lifetime leasehold interest in the apartment from her father, who purchased the building in 1944. At that time, the rent was set at $244.37, the same rent that continues to be registered with DHCR.
In a prior related appeal brought by Bruce E. Bozzi, as a sublesee, against the Goldblatts, as sublessors, this Court held that "[t]here is no dispute that the apartment became subject to the rent stabilization laws in 1974 prior to [Bozzi's] occupancy" (Bozzi v Goldblatt, 186 AD2d 82, 83 [1st Dept 1992]). Notwithstanding that order, Bozzi, the Goldblatts, and the prior owner of the building subsequently entered into a 1995 so-ordered stipulation of settlement and discontinuance in which they purported to agree that the apartment was exempt and excluded from certain protections and provisions of the rent stabilization laws. They also agreed that so long as Bozzi continued to occupy the apartment, he would do so at the rent specified in his sublease, and that they had not violated or evaded rent regulations laws. Although the rent registered with DHCR for this apartment has at all times been $244.37 a month, the sublease was at a considerably higher amount. In addition to addressing the issue of subletting, the stipulation also provided that the siblings would have a lifetime interest in the apartment as their parents' successors in interest. The last Bozzi sublease, an agreement dated April 30, 1997, extended the lease to June 30, 2013 and was in effect when plaintiff, the new owner, purchased the building. In 2009, the prior owner and defendants entered into a lease providing that neither the lease nor the apartment was subject to rent stabilization. Although that lease also provided that defendants had to obtain owner's prior written consent for a sublease, a subsequent Lease Amendment Agreement dated August 5, 2011 deleted that requirement in its entirety. A replacement provision in the lease amendment allowed defendants to sublease the apartment without owner's consent, subject to certain time limitations. It also provided that such limitations "shall not apply" to Bozzi and his co-tenants. The sale of the building to the new owner, plaintiff here, [*2]closed August 5, 2011, the same date the prior owner executed an assignment of leases.
Plaintiff contends that defendants had no right to sublease the apartment to Bozzi once his lease expired in June 2013, because it is not their primary residence. Plaintiff seeks a counter-declaration that defendants do not occupy the apartment as a primary residence. Plaintiff also argues that because the apartment is rent stabilized, any new lease and sublease will have to comply with all applicable rent regulations. Defendants contend, however, that they have a contractual right to unrestricted subletting, that the apartment is not rent-stabilized, and that plaintiff has tortiously interfered with their right to extend their sublease with Bozzi.
"An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court" (Delgado v City of New York, 144 AD3d 46, 51 [1st Dept 2016]). Consequently, the motion court correctly held that the apartment is subject to rent stabilization. The defendants' right to sublet the apartment, therefore, is limited by the applicable provisions of the rent stabilization laws because, as stated in our prior 1992 order, this is a rent-stabilized apartment. Moreover, a tenant cannot enter into a private agreement purporting to take a lease out of the rent regulation regime "even if the particular agreement is the product of a stipulated settlement" (Drucker v Mauro, 30 AD3d 37, 41 [1st Dept 2006], lv dismissed 7 NY3d 844 [2006] [internal quotation marks and citation omitted]) regardless of whether the agreement bestows obvious advantages on the tenant (390 W. End Assoc. v Harel, 298 AD2d 11, 16 [1st Dept 2002]). "Any [agreement] provision that subverts a protection afforded by the rent stabilization scheme is not merely voidable, but void" (Drucker, 30 AD3d at 39; Rent Stabilization Code [9 NYCRR] § 2520.13). Notably, in 1995, when the parties' stipulation was so-ordered, the law was settled that "any purported waiver of rent stabilization rights in a settlement agreement is invalid as a matter of public policy" (Cvetichanin v Trapezoid Land Co., 180 AD2d 503, 504 [1st Dept 1992], appeal dismissed 79 NY2d 933 [1992]).
In denying plaintiff's motion for summary judgment dismissing defendants' first counterclaim for tortious interference with prospective economic relations, Supreme Court stated it was doing so on the basis that it was "constrained" to give effect to the so-ordered stipulation. Having now determined that the 1995 stipulation purporting to remove the apartment from rent regulation is void ab initio, there is no basis for defendants' claim that they sustained economic damages because plaintiff interfered with their right to continue subletting the apartment to Bozzi (see Carvel Corp. v Noonan, 3 NY3d 182, 189-190 [2004]; Sustainable PTE Ltd. v Peak Venture Partners LLC, 150 AD3d 554, 556 [1st Dept 2017]). Plaintiff's motion for dismissal of the tortious interference counterclaim should be granted.
Supreme Court properly denied, however, plaintiff's motion for a "counter-declaration" that defendants have disavowed the apartment as their primary residence. There is no predicate notice or properly instituted claim against them for non-primary residence (Rent Stabilization Code [9 NYCRR] 2524.4[c]; Park House Partners, Ltd. v DeIrazabal, 140 AD2d 84, 86 [1st Dept 1988], lv dismissed 73 NY2d 866 [1989]). In any event, this action for a declaratory judgment is for narrow relief, to wit, that defendants must comply with the statutes and regulations applicable for subletting a rent-stabilized apartment. Although plaintiff speculates that defendants have no intention of moving back into their childhood apartment, generally a conflict over a tenant's primary residence should be resolved at trial in a properly commenced proceeding (Extell Belnord LLC v Uppman, 113 AD3d 1, 12 [1st Dept 2013][internal citation omitted]).
We find, however, that Supreme Court properly granted plaintiff's motion for dismissal of defendants' equitable estoppel defense because defendants merely pleaded this defense [*3]without any supporting facts (see Bank of Am., N.A. v 414 Midland Ave. Assoc., LLC, 78 AD3d 746, 750 [2d Dept 2010]).
We have considered the parties' remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 19, 2019
CLERK